Opinion delivered June 6, 1888.

## No. 5995.

### H. D. BUCHANAN v. THE STATE.

THEFT—ACCOMPLICE TESTIMONY—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for cattle theft, inasmuch as it fails to corroborate the testimony of the accomplice, upon which the conviction rests.

APPEAL from the District Court of Tom Green. Tried below before the Hon. J. C. Randolph.

The conviction was for the theft of two head of cattle, the property of E. Burke, and the penalty assessed against the appellant was a term of two years in the penitentiary.

Sam Moore was the first witness for the State. He testified that, about October 10, 1887, he and the defendant went to the Miles—otherwise known as the "Picnic"—pasture, in Tom Green county, and got the two cows described in the indictment. One of them was a light red heifer and the other a dark red heifer, both branded with the letter B on the left hip. They knew who the cows belonged to at the time, and discussed the taking of the same before they took them, the defendant saying that he was the hide and cattle inspector of Tom Green county, and that no risks would be run in taking them. They drove the two heifers from the "Picnic" pasture into Miles's other pasture, which was across a lane from the "Picnic" pasture. They then

went to the town of San Angelo and bargained to sell the animals to John Voss, who ran a butcher shop for one Antonio Woodie, a Chinaman. They were to get ten dollars per head for the animals. The defendant and the witness then sold the two cows to John Voss, and two or three days later went to the Miles pasture, got the cows and drove them to Halbert's slaughter pen. Dave Brown was not at Halbert's pen at that time. Witness and defendant then traveled different routes to town, and met at Woodie's butcher shop, where and when defendant wrote the bill of sale conveying the cows to John Voss, signing witness's name and his own name thereto, and telling John Voss that he had inspected the animals, and that they were all right. When he first proposed the theft of the cows to witness, defendant said that he would inspect and pass them as "all right," and thus prevent all danger of detection or conviction. Defendant got three or four dollars from John Voss and eighteen dollars from Woodie on this transaction. About a week later the defendant told witness that, in order to prevent detection, they would have to steal and destroy the hides of the animals. Between one and two o'clock that night, witness and defendant went to the rear of the hide store of one Halpin, to whom the hides had been sold by Voss, and defendant went into Halpin's shed room, got the two hides and passed them out of the store to witness. Witness then took the hides to the river, southwest from Halpin's store, at which point he was soon joined by defendant. He and defendant then cut the hides into strips and threw the strips into the river. The moon was then shining very bright.

Cross examined, the witness said that the grand jury told him that if he would tell the whole truth about this matter he, witness, would come out "all right." Defendant got a part of the proceeds of the sale of the Burke cows. Voss and Woodie both paid money to defendant for those cows. The defendant wrote the bill of sale to Voss for Woodie, and signed witness's name as the grantor, and his own name as a witness thereto. Witness was present and saw defendant write the bill of sale, but did not see him sign his, witness's, name to it. He next saw the bill of sale in the grand jury room, and recognized it by the handwriting. He knew and identified defendant's handwriting at once. Witness did not owe the defendant a cent at the time of the sale of the Burke cows to Voss and Woodie. He did not hear the defendant tell either Voss or Woodie that witness owed him money and was paying him with the proceeds of that sale.

Witness denied that he ever told defendant, in the presence and hearing of George Smith, to get money due him by witness from John Voss. No persons other than the two boys of Felix Flores, the oldest being aged twelve and quite deaf, were at Halbert's pens when witness and defendant penned the two cows. Dave Brown was not then at the pens, but witness learned afterward that he butchered the two cows for Voss and Woodie.

E. Burke testified, for the State, that he lived in San Angelo, Tom Green county. The witness, in October, 1887, was in the employ of Mr. Miles, and at that time had twelve head of cattle in Miles's pasture, on the east side of the North Concho river. It was the habit of the witness to salt his cattle, and by that means he saw them every day or two while they were in the pasture on the east side of the river. Those cattle afterward got into Miles's pasture on the west side of the river, known as the "Picnic" pasture, in which pasture witness salted them once or twice a week until about October 9 or 10, when he missed two head of them, one being a light red and the other a dark red in color, both branded B on the left hip. Witness had never seen either of the two said animals since they disappeared. They were taken, if taken at all, without the knowledge or consent of the witness.

John Voss testified, for the State, that in October, 1887, he ran a butcher shop in San Angelo for Antonio Woodie, and on the tenth day of that month he bought three head of cattle from Sam Moore. The defendant was no party to that transaction, and had nothing whatever to do with it, directly or indirectly, so far as the witness was concerned. Defendant was not present at the time of the negotiation between witness and Moore. The witness never saw the cows he bought from Moore until after they were slaughtered, reduced to beef and brought to his shop. Moore told witness that he penned the three beeves at Halbert's pens, and witness sent his butcher, Dave Brown, to that pen to slaughter them. Brown slaughtered them and brought them to the shop, quartered and the hides rolled up in the wagon. Witness did not unroll the hides nor examine, but saw that one was light red in color, and the other dark red. He never saw the brands. He sold those hides to Halpin as soon as they were brought in. Defendant was never present at any conversation between witness and Moore about the sale and purchase of the cows, nor did Sam Moore ever directly or re-

motely intimate to witness that defendant was in any wise interested in the transaction. Moore claimed, and sold, the animals as his individual property. After the slaughter of the cows defendant and Moore came to witness's shop together, and defendant, remarking that he had inspected the animals and that they were all right, wrote a bill of sale to cover them, to which, in Moore's presence, he signed Moore's name as grantor and his own as witness. Witness then paid the larger part of the purchase money to the defendant, in Moore's presence, with the understanding that he was paying it on a debt due by Moore to defendant. Defendant claimed the money paid to him by witness as a debt due him by Moore, and Moore, who was standing by and saw that payment, if he did not verbally acquiesce, did not protest nor dispute the claim, but accepted the balance of the purchase money. Witness paid the purchase money partly in cash and partly in an order on Woodie.

Antonio Woodie testified, for the State, that he was in the butcher business in San Angelo in October, 1887. He did not direct his personal attention to that business, but left it in the exclusive management of his agent, Mr. John Voss. On the tenth day of October, 1887, Voss told witness that he had bought three head of cows from Sam Moore, and directed witness to pay Moore twenty dollars on said purchase. Moore and defendant came to witness for the money, and defendant told witness to pay him eighteen dollars and Moore two dollars, which witness did. Nothing was said about a debt due defendant by Moore.

Dave Brown testified, for the State, that he butchered some cattle for John Voss at the Halbert slaughter pen on or about October 10, 1887. Two of the said cattle were three year old heifers, both branded B on the left hip, one being a light red in color, and the other a dark red. When he reached the slaughter pen, he found one of these animals tied to a small sapling in the chute, and Sam Moore was driving or leading the other towards the pen. He turned that animal into the pen and left. Defendant was not then at or about the pen. Witness slaughtered the animals, left their heads at the pen, and took the beef and hides to the butcher shop in town.

W. S. Cunningham testified, for the State, that he was a member of the grand jury which preferred the indictment in this case. He and M. B. Pulliam, another member of the grand jury, were appointed by that body to go with the witness, Sam

Moore, to hunt for certain strips of cow hide said by Moore to have been thrown into the river near Halpin's hide store. A Mexican, hired by them, waded into the river at a point indicated, and found a few strips of red cow hide. On one of the strips the witness saw a part of a brand which resembled a part of the letter B.

Leon Halpin testified, for the State, that he purchased the hides of all animals killed by John Voss. He had no personal knowledge of the loss of any hides in October, 1887, but he thought his brother, who was his business manager, could tell.

S. Halpin testified, for the State, that he missed two hides from the shed room of the store, in October, 1887, but could not tell what kind of hides were missed.

The State closed.

The defense recalled Sam Moore, and asked him: "Did you not, when in jail, a month ago, tell one Rivers, who was then confined in jail, that you owed Huff Buchanan money, but that he would have a hell of a time getting it?" He answered: "I don't know whether I did or not. I won't say that I did, and I won't say that I didn't."

Rivers, who admitted that he was confined in jail on a charge of sheep stealing, testified, for the defense, that Sam Moore, while in jail, said to him: "I am owing Huff Buchanan some money, but he will have a hell of a time getting it."

No brief for appellant has reached the reporters.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant and one Sam Moore were jointly indicted for the theft of two cattle, the property of one E. Burke. Appellant was alone put upon trial, and Sam Moore, his co-defendant, was allowed to turn State's evidence, and testified against appellant on the trial. If his testimony is to be credited, and if it was sufficiently corroborated by the other evidence, there can be no question but that the case against appellant was fully made out. As to whether he was sufficiently corroborated is the only material question upon this appeal.

If there is any evidence corroborating the accomplice at all, and tending to connect the defendant with the theft, it is, in our opinion, quite meager and unsatisfactory. It amounts to about

this: That defendant was hide and cattle inspector for the county, and told Voss that he had inspected the cattle and they were all right; that he wrote the bill of sale for the animals from Sam Moore to Woodie, the butcher, and witnessed it (Sam Moore being present), and that he received part of the money paid on the purchase of the animals. As to the money which he received, he accounted for that fact by proving that it was in payment of a debt due him from Moore. As to his writing the bill of sale and signing Moore's name to it, that amounts to nothing, Moore being present and assenting to if not requesting it. It is true that he was hide and cattle inspector—had inspected the animals, and said they were all right. This he might and could have done without being a party to or connected with the theft. He may not have known the mark and brand of E. Burke. It is not shown that he did know them, and that thereby he was put upon notice that they had been once the property of Burke. It is not shown that Sam Moore owned no cattle, or that he was not a party who might honestly have possession of and own cattle that previously belonged to his neighbor, and that defendant, from Sam Moore's character and circumstances, was put upon enquiry as to the honesty of his, Sam Moore's, possession of cattle. If Sam Moore was an honest man, of good reputation, and one likely to own cattle, honestly, appellant might honestly and innocently have inspected his cattle and reported them "all right." We say the evidence corroborative of Sam Moore's testimony tending to connect defendant with the theft of the animals is too meager and unsatisfactory in the absence of proof of other circumstances which might, if they existed, have been proved, and which would have been more cogent at least, if not conclusive of his guilt or innocence.

Because the evidence corroborating the accomplice testimony is, in our opinion, inconclusive and insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*