DAVE·RUTHERFORD V. STATE.

No. 9401.   Delivered November 25, 1925.

**1.—Carrying a Pistol—Postponement—Properly Refused.**

Where on a trial for carrying a pistol a private prosecutor was asked the source of his employment, and replied that he was employed by the sons of a man who had been killed by appellant, there was no error in refusing to postpone the trial to enable appellant to make an investigation of the statement of the private prosecutor.

**2.—Same—Argument of Counsel—Bill of Exceptions—Must be Comprehensive.**

Where objection is made to the argument of counsel for the State, the bill of exception must point out sufficient circumstances and facts of the case to enable us to pass intelligently on the objection to the argument without reference to the statement of facts, and where a bill is incomplete in this respect it presents no error.   See Vernon's Tex. Ann. P. C. 537.

Appeal from the County Court of Coleman County. Tried below before the Hon. S. J. Pieratt, Judge.

Appeal from a conviction for carrying a pistol, penalty a fine of $200.00.

The opinion states the case.

*W. Marcus Weatherred,* for appellant.

*T. H. Strong,* County Attorney; *Critz & Woodward; Sam D. Stinson,* State's Attorney; *Nat Gentry, Jr.,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—The offense is the unlawful carrying of a pistol; punishment fixed at a fine of $200.00.

The State's witness Martin testified that he saw the appellant on the streets of Santa Anna with a pistol in his hand. He was on "all fours." Joe Griffith was standing about twenty feet away. The witness took the pistol from the appellant. Appellant had been shot through the head. · The witness did not know where he had obtained the pistol. According to Connerly, a witness for the State, he was a constable. He saw the appellant on the night of February 16th on the streets of Santa Anna with a pistol in his possession. Appellant shot

Joe Griffith, killing him, and then shot the witness. Joe Griffith also shot the appellant. The witness said he did not know where the appellant got the pistol. From his testimony we take this quotation:

"I saw it first after it was fired. When I first saw the defendant he was going out of the east end of the alley in. Santa Anna in a buggy; deceased, Joe Griffith, called him to stop; this was the way the defendant was going at the time, in the practical direction of the defendant's home, and it was about 9:30 or 10 o'clock at night."

On re-direct examination by the State, this witness testified as follows:

"When Joe Griffith called for the defendant to stop, the defendant got out of the buggy, and he and deceased begun to talk, and I went on towards the horse and buggy and didn't hear what they said. * * * I don't know whether he was on his way home or not."

The State was represented by an attorney employed by the private prosecution. Preliminary to the selection of the jury, appellant sought to ascertain the source of employment. The attorney who appeared for the prosecution testified on the hearing of the motion that he was employed by the sons of deceased Griffith. He also testified that the money which had been paid him had been borrowed by the sons of the deceased at the First National Bank of Santa Anna; that they had given him a note for the remainder of the fee, which note was still unpaid. Appellant then requested that the hearing be postponed, averring that he believed the funds were contributed by other persons. In refusing to delay the trial for further investigation of the matter the court, in our judgment, committed no error.

The complaint of the refusal to sustain the challenges for cause against various jurors because of opinions formed from reading newspapers touching the tragedy in which Joe Griffith was killed, in view of the explanation of the trial judge that none of the jurors had an opinion touching the guilt of the appellant of the charge on trial, is without merit.

The testimony that Joe Griffith was killed by the appellant and that the witness Connerly was shot was not improperly received. These acts of the appellant were res gestae of the homicide in that they were so interwoven with the possession of the pistol that in developing the transaction, the exclusion of them was not practicable.

The complaint of the insufficiency of the evidence, we think, was not tenable. The circumstances were sufficient to lead to the conclusion that the appellant was traveling upon the streets with a pistol either upon his person or in his buggy. The case of Pyke v. State, 192 S. W. Rep. 1066, wherein the sole proof was that Pyke, during an altercation, picked up a pistol from the ground and struck his adversary, is not deemed in point; neither are the precedents which are found collated in the opinion in that case.

The attorney for the prosecution, in his argument, used the following language:

"If you had such men as Will Coulson and you, Mr. Ashmore, that accidentally violated the law it would be a different proposition, but here you have a man that assassinated one man and tried to another, and if you give him the least fine would be ridiculous. Give him $250.00 fine and a spell in jail and let him know that you and the public don't endorse it."

Exception was reserved to these remarks at the time and a special charge withdrawing them was prepared, presented and refused. The bill of exceptions complaining of this argument wholly fails to set out any facts which would make clear to us that the argument was uncalled for and injurious. Mr. Vernon's Annotated C. C. P., on page 537, cites a great many authorities supporting the proposition that a bill of exceptions should be so explicit that the matters may be comprehended without recourse to inferences and so as to enable the appellate court to fully understand all the facts on which the rulings depend; it must set out the proceedings below sufficiently to enable the court to know that an error has been committed, and be so full that in and of itself it will disclose all that is necessary to make manifest the alleged error, and must state enough of the evidence or facts proven to render intelligible the rulings involved, and it cannot be aided either by a statement in reply to a motion for a new trial, or *by the statement of facts*, nor will the appellate court supply omissions or aid the bill by inferences or presumptions. For aught this court can learn from this bill of exceptions, the prosecutor was entirely justifiable in the argument. We must decline to look to a statement of facts in order to determine the error in a bill of exceptions unless specific reference to some particular part of such statement of facts is made in the bill. To do so would be a violation of the rule laid down in opinions almost without number rendered by this court, and would be to lay down a precedent which would involve us in endless

and hopeless work in trying to discover from the statement of facts evidence of matters complained of in bills of exception which did not follow the rules. What we have just said is true of other bills complaining of arguments.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*