## JOE MINOR V. THE STATE.

No. 10931.    Delivered June 1, 1927.

Rehearing denied October 26, 1927.

Second rehearing denied November 23, 1927.

**1.—Murder—Change of Venue—Discretion of Court—Rule Stated.**

Where, on a trial for murder, the appellant moved for a change of venue, presenting numerous witnesses in support of same, the state, controverting the motion, produced about the same number, and after hearing the evidence, the trial court refused the motion, no abuse of the court's discretion is apparent.

**2.—Same—Continued.**

The rule in this state is: "Unless it is clear that the trial court has abused or arbitrarily exercised a judicial discretion, the action in refusing a change of venue will be sustained on appeal. See Barnett v. State, 176 S. W. 580, and other cases cited. Branch's P. C., Sec. 299.

**3.—Same—Special Term of Court—Appointment of Jury Commissioners— Held Proper.**

Where the District Judge, after the adjournment of his regular term of court, called a special term at which special term he had summoned a jury commission to select a grand jury and petit juries to function during said special term, this procedure was proper.

**4.—Same—Continued.**

While Arts. 93, 94, 95, 96 and 97 of the Code of Criminal Procedure of this state, which provided for the holding of special terms of District Courts was omitted from the revision of 1925, the Revised Civil Statutes of 1925, Arts. 1919, 1920 and 1921 provides that at a special term of the District Court, jury commissioners may be appointed and may select and draw grand and petit jurors for such special term of court then in session, or during vacation. See Russell v. State, 242 S. W. 240, and other cases cited.

**5.—Same—Charge of Court—On Accomplice Testimony—Held Correct.**

Where the court charged affirmatively that two of the state witnesses were accomplices, and submitted the question of a third state witness being an accomplice for the determination of the jury, under the facts as they appear in the record, no error is shown. See King v. State, 123 S. W. 135; Brown v. State, 124 S. W. 101.

**6.—Same—Requested Charge—Issue Not Raised—Properly Refused.**

Where appellant requested the court to charge the jury that if the accomplice William Franks implicated appellant in order to keep from being killed, or if they had reasonable doubt thereof, to acquit him, there being no evidence in support of such issue, the charge was properly refused.

**7.—Same—Continued.**

Nor was there error in the refusal of the court to charge the jury to acquit appellant if they should find or have a reasonable doubt as to whether the accomplice was connected with the killing of deceased for the purpose of participating in any moneys from the widow of the deceased, such fact, if true, not being exculpatory of appellant.

**8.—Same—Requested Charge—Covered by Main Charge—Properly Refused.**

Where the court in his main charge instructed the jury that unless they found from the evidence and beyond a reasonable doubt that the deceased came to his death by means other than that alleged in the indictment, to acquit the appellant, a special charge presenting the same matter was properly refused.

**9.—Same—Charge of Court on Alibi—Held Correct.**

Where the court charged the jury that if they believed from the evidence that the appellant was in his north field and in company with one Roy Callicut and was not present at the time and place alleged in the killing, to acquit him, sufficiently presented appellant's defensive theory of an alibi.

### ON REHEARING.

**10.—Same—Accomplice Testimony—Corroboration Necessary—Rule Stated.**

The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that "there be other evidence tending to connect the defendant with the offense committed." Art. 718, C. C. P. 1925. Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense.

**11.—Same—Continued.**

It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supplies the test. If by this rule it appears on appeal that before the jury there was proof comfirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied. See Underhill's Crim. Ev., 3d Ed., Secs. 129 and 130; Walker v. State, 253 S. W. 543, and other cases cited in opinion on rehearing.

**12.—Same—District Courts' Special Terms—Rule Stated.**

The omission from the Code of Criminal Procedure of 1925 of the provisions relating to the calling of a special term of court, was not destructive of the right and power granted to the District Judge to call a special term of court for the trial of criminal cases. Such power is found in the Constitution of the State, Art. 5, Sec. 7, and in Art. 1920 of the Revised Civil Statutes of 1925. Following Hunter v. State, No. 11023, not yet reported.

**13.—Same—Bill of Exception—Qualification by Court—Controls.**

Where appellant complains of the admission of a hypothecated question propounded to a doctor, because the hypothesis was not presented in the evidence, and the bill complaining of the matter is qualified with the statement that it was based on testimony which went before the jury, the appellant is bound by the qualification, and no error is shown.

ON SECOND MOTION FOR REHEARING.

**14.—Same—No Error Presented.**

On a second motion for a rehearing, appellant directs our attention to some inaccuracies in our original opinion in our discussion of the facts. These inaccuracies, however, do not affect the conclusions reached, and his request to file a second motion for rehearing is overruled.

Appeal from the District Court of Hopkins County. Tried below before the Hon. Grover Sellers, Judge.

Appeal from a conviction of murder, penalty ninety-nine years in the penitentiary.

The opinion states the case.

*Dial & Brim* of Sulphur Springs, for appellant.

*Emmet Thornton*, County Attorney of Hopkins County; *Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State. On discretion of court to refuse a change of venue, the state cites: Barnett v. State, 176 S. W. 583; Mooney v. State, 176 S. W. 53; Hemphill v. State, 170 S. W. 154; Ferguson v. State, 61 Tex. Crim. Rep. 152, and Branch's P. C., Sec. 299.

BETHEA, JUDGE. — The appellant was convicted for the offense of murder, and his punishment assessed at ninety-nine years in the penitentiary.

The state relied for a conviction upon the testimony of William Franks and Ida V. Sickles, accomplices. Ida V. Sickles was the wife of the deceased (Jim Sickles), and William Franks was the only eye-witness to the killing. Franks testified that the deceased came to his death without a struggle after the appellant had placed a rag over deceased's face, and that, at that time, witness smelled chloroform. This witness further testified that he and the appellant, after deceased was dead, in order to cover up the crime, carried deceased out of the hay barn in which the killing occurred, and tied a rope around the foot of the dead man, and around the horn of a saddle on the horse deceased had been riding, and turned the horse loose; that the horse dragged deceased some distance over a hay meadow; that the appellant then drove his wagon some three or four miles to his home; that the accomplice witness followed along later and gave the alarm, making the statement that deceased came to his death by accident.

It was the contention of the state that deceased came to his death as a result of the administration of chloroform, or by

strangling, or smothering, or choking, as alleged in the indict-ment.

The accomplice witness Franks testified that the appellant, with a rag in his hands, walked up behind deceased; that appellant put this rag over deceased's face; that appellant pulled deceased down, and fell on top of him, and remained on top of him about ten minutes. The post-mortem examination was conducted by a physician who testified that there were no bones broken, no dislocations, no bruises of the skin, and, in fact, no evidence of any violence having been used such as would cause the death of the deceased.

The theory of the state was that appellant was on intimate terms with the wife of deceased; that appellant and the wife of deceased had taken out a large amount of insurance on the life of deceased without the knowledge of deceased; and that they had connived together to put deceased to death and collect the insurance. The accomplice witness Ida V. Sickles, wife of the deceased, in her testimony, bore out this theory of the state.

The testimony as given by employees of various insurance companies was to the effect that at the time of the death of deceased there were in existence policies totaling $17,500 which were payable in the event deceased came to his death as the result of accident. Each of these employees testified that appellant was present at the time of the writing of the application for the insurance on the life of deceased. They also testified to appellant's desire to secure double indemnity insurance on the life of deceased. Their testimony also reveals that appellant paid, and promised to pay, all premiums on such policies. The policies were issued during a period of three or four months immediately preceding deceased's death.

The record further discloses that deceased was a tenant farmer on the farm of appellant.

The theory of the defense was that deceased came to his death by being dragged by a horse. The testimony of the pathologist who held the post-mortem examination tends to offset this theory of appellant, and, on the other hand, tends to establish the allegations in the indictment that deceased came to his death as a result of inhaling chloroform, and as a result of appellant "holding and closing the mouth and nose of the said Jim Sickles, and by strangulating and smothering the said Jim Sickles so that he could not breathe."

There are in the record twenty-three bills of exception. The first bill of exception contains about 247 pages of typewritten matter and complains of the refusal of the court to grant appel-

lant's application for a change of venue. We have closely examined this bill of exception, and find that some twenty-five witnesses testified for the appellant to the effect that there existed in the county prejudice against him of such a nature as would deprive him of an opportunity to obtain a fair and impartial trial. The state filed an answer controverting appellant's application, and offered some forty-seven witnesses who testified that, in their opinion, the appellant could secure a fair and impartial trial in the county. The issue on the question of change of venue was sharply drawn. The bill of exception, however, discloses an abundance of evidence to support the court's conclusion, either that the motion should, or should not, have been granted. However, we think the preponderance of the evidence was in favor of the state's contention and that the court did not err in refusing to grant appellant's application for a change of venue. The rule in this state is:

"Unless it is clear that the trial court has abused or arbitrarily exercised a judicial discretion, the action in refusing change of venue will be sustained on appeal."

From a careful examination of this bill of exception, we are unable to conclude that the learned trial judge, in passing on this issue, was guilty of any abuse of the discretion lodged in him. Barnett v. State, 176 S. W. 580; Mooney v. State, 176 S. W. 52; Hemphill v. State, 170 S. W. 154; Ferguson v. State, 61 Tex. Crim. Rep. 152; Branch's Penal Code, Sec. 299.

The next bill of exception, No. 3 in the record, complains of the refusal of the court to quash the venire. This is a rather voluminous bill and involves an interesting question. The appellant's contention is that, inasmuch as Arts. 93, 94, 95, 96 and 97, Vernon's Code of Criminal Procedure, 1905, have been omitted from the new code, the learned trial judge erred in selecting jury commissioners and having them draw grand and petit jurors for the special term convened by him on February 8. It seems the District Judge of Hopkins County after having his attention called to the matter, failed and refused to appoint, at the regular August term in 1926, a jury commission to select grand and petit jurors for the following regular term, which was to convene on the fourth Monday in January, 1927. On the last named date, the regular term was convened, and such business as in the court's opinion could lawfully be transacted was disposed of, and such regular term was adjourned, and a special term of the District Court was called, convened, and held in said county on the 8th of February, 1927. Upon the first day of said special term, the learned trial judge selected

and had summoned a jury commission to select a grand jury and petit juries to function during said special term, and same were so selected and empaneled, and said newly empaneled grand jury returned the indictment against appellant upon which he was tried and convicted.

The contention of appellant is that this procedure was unauthorized. He points out that since 1905, and prior to the adoption of the present code of 1925, the Code of Criminal Procedure for the State of Texas had carried Arts. 93, 94, 95, 96 and 97, which provided for special terms of the District Court for the trial of criminals, and which also provided that a person indicted at a special term of a District Court may be tried at such special term. He also points out that similar provisions were included in the civil statutes during the same period of time, being Arts. 1720, 1721, 1722, 1723 and 1724. The old Arts. 93, 94, 95, 96 and 97 were not carried into the new Code of Criminal Procedure. Appellant refers us to Art. 1 of the Code of Criminal Procedure, 1925, and likewise calls this court's attention to the general repealing clause of the Acts of 1925, contending that for the first time since 1905 the Acts of 1925 with reference to criminal procedure governs the trial of criminal cases, and that Arts. 93, 94, 95, 96 and 97 having been left out, and therefore repealed, no provision is made for the trial of criminals at special terms of the District Court.

We are unable to agree with this contention. Revised Civil Statutes, 1925, Arts. 1919, 1920 and 1921 provide that a special term of the District Court jury commissioners may be appointed and may select and draw grand and petit jurors for such special term of court. Such statutes further provide for the calling of a special term of the District Court, either at a term of court then in session, or during vacation. There seems to be some confusion as to the distinction between the manner of selecting grand and petit jurors for a special term of court and selecting them for a regular term of court. However, in the absence of mandatory instructions for the selection of jurors by jury commissioners at a special term of court (which instructions are provided by law), the fair and proper means of selection of jurors, grand and petit, which has been judicially sanctioned, is by the method of a jury commission. It is evident that a District Judge might not, at a regular term, see the necessity of convening a special term of court. Nevertheless, the District Judge is authorized to appoint jury commissioners at a special term of District Court for the selection of grand and petit jurors.

The appellant stresses the omission in the Code of Criminal Procedure of Arts. 93, 94, 95, 96 and 97, providing for a special term of the District Court, contending that same have been repealed by the new code. The intentional omission from such procedure can be accounted for in this way: The civil statutes, adopted at the same time as the Code of Criminal Procedure, and by the same legislative body, provides for the calling of special terms of the District Court for the trial of both civil and criminal cases, and provides rules governing same. It would certainly be a broad assertion to say that the time for holding District Court to try criminal cases can only be provided for by laws incorporated in the Code of Criminal Procedure. Should this be a correct proposition of law, it would follow, inasmuch as our Code of Criminal Procedure has never provided a definite date for holding terms of the District Court in any county of this State, that all convictions heretofore had in the District Courts, at terms of court held at times provided by civil statutes, namely, regular terms and special terms, are invalid. The appellate courts of our state, both civil and criminal, have uniformly held that there does not exist such a breach of distinction between civil and criminal statutes and their provisions, in the way of procedure, but that the one is dependent upon the other, and constructions must be made in the light of both. Russell v. State, 242 S. W. 240; Ex Parte Clemming, 234 S. W. 667; Chant v. State, 166 S. W. 513; Newton v. State, 93 Tex. Crim. Rep. 314, 247 S. W. 281; Ex Parte Holland, 91 Tex. Crim. Rep. 339, 238 S. W. 654; Stephens v. State, 93 Tex. Crim. Rep. 164, 245 S. W. 687; Wilson v. State, 87 Tex. Crim. Rep. 538, 223 S. W. 217; Elliott v. State, 58 Tex. Crim. Rep. 200, 125 S. W. 568; Bennett v. State, 95 Tex. Crim. Rep. 422, 254 S. W. 949.

Bill of exception No. 5 complains that the learned trial judge failed to instruct the jury to return a verdict of not guilty. This challenges the sufficiency of the evidence and presents no error.

Bills of exception Nos. 6, 7 and 8 complain of the refusal of special charges. The special charges complained of in this bill are fully covered by the court's main charge.

Bills of exception Nos. 9, 10, 12, 13, 18, "18" and 19 complain of the action of the learned trial judge in not giving special charges upon the testimony of accomplices. We have examined the charge carefully and find that the learned trial judge gave an appropriate charge for this character of case, and we do not think the court erred in refusing to give said specially

requested charges. King v. State, 123 S. W. 135; Brown v. State, 124 S. W. 101. We think these authorities dispose of the only serious question raised in the exceptions to the court's charge and of the bills of exception relating to accomplice testimony.

Bill of exception No. 11 presents no error.

Appellant, in his bill of exception No. 14, complains of the refusal of the trial court to give a special charge which stated that if the accomplice William Franks implicated appellant in order to keep from being killed or if there existed a reasonable doubt thereof, to acquit him. There is no evidence raising the issue of duress, and we think the court very properly refused this charge.

By bill of exception No. 15, appellant complains of the refusal of a charge to the effect that if the accomplice was connected, directly or indirectly, with the killing of deceased, for the purpose of participating in any moneys from the widow of the deceased, or if a reasonable doubt thereof existed, to acquit him. We know of no reason why the fact that the accomplice expected remuneration for his part in the affair would entitle appellant to be relieved from the consequence of murder.

Bill of exception No. 16 complains of the refusal of the court to charge the jury to the effect that if they believed that deceased came to his death by means other than that alleged in the indictment, and charged to have been committed by this appellant, or if they had reasonable doubt thereof, to acquit the appellant. The court, in its main charge, does require the jury to find that deceased came to his death by the means charged in the indictment and also charges the converse of this. This certainly ought to be sufficient.

Bill of exception No. 17 complains of the learned trial judge's refusal to instruct the jury that if they believed from the evidence that the appellant was in his north field at the time of the killing, working his cane, and in company with one Roy Callicut, and was not present at the time and place alleged in the indictment of the killing, to acquit him. The matters complained of in this bill are fully covered in appellant's ninth special charge, which was given by the learned trial judge.

Bills of exception Nos. 28 and 29 complain of the action of the learned trial judge in permitting hypothetical questions to be propounded to the expert witnesses, because no facts were introduced which would form the basis for the hypothesis stated in the question. An examination of the statement of facts, and especially of the testimony of the accomplice witness William

Franks, reveals that a full and complete predicate was laid for such questions.

Bill of exception No. 30, as qualified by the judge, presents no error.

Bill of exception No. 31 complains of the action of the learned trial judge in permitting the state to ask the witness Ida V. Sickles, self-confessed accomplice, over the objection of the appellant, the following question:

"At any time the officers were talking to you did they ever try to get you to tell anything but the truth?"

The bill does not show that the witness answered the question. We are therefore unable to appraise the error complained of. Nugent v. State, 273 S. W. 598.

Bill of exception No. 32 complains of the action of the learned trial judge in permitting the state to ask the accomplice witness William Franks whether appellant gave him and deceased anything on the 19th of January, being two days before the death of deceased, and that, over the objection of appellant, the witness was permitted to say that appellant gave them some whiskey, between a quart and a half-gallon, and that the whiskey "kinder made him sick," and the witness did not drink much of it, and that the deceased only took a drink of it. This was objected to as being immaterial and prejudicial to the appellant. The bill does not set out the antecedent and surrounding circumstances sufficiently to enable us to appraise the bill and judge whether or not the evidence was immaterial. We are unable to judge whether or not there was any connection between the whiskey furnished by the appellant to said witness two days before the killing and the transaction involved, but certainly the bill does not negative this idea. Black v. State, 151 S. W. 1053; Rutherford v. State, 277 S. W. 669; Mann v. State, 277 S. W. 1085.

The evidence is sufficient to support the verdict. Finding no error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The deceased, Jim Sickles, lost his life on the 21st day of January, 1927. According to the

testimony of William Franks, the death of the deceased was brought about by the use of chloroform by the appellant. Assuming that the jury resolved the conflicting evidence in favor of the state and that the corroborating facts were sufficient to sustain the testimony of the accomplice witnesses, the verdict of the jury to the effect that the appellant murdered Jim Sickles is supported by the evidence. Two of the witnesses, namely, William Franks and Ida Sickles, were accomplices. The jury was so instructed. Whether Allen was an accomplice witness was a question of fact which was submitted to the jury in the charge of the court, and the verdict implies that he was not an accomplice. The sufficiency of the corroborative testimony is challenged. The deceased was a share-farmer upon the premises of the appellant and also a day laborer. The distance between the residence of the two was about a quarter of a mile. Sickles had resided upon the farm of the appellant for about a year. At the time of his death there were seven insurance policies upon his life, in each of which Ida Sickles was named as beneficiary. In the issuance of these, the appellant was instrumental and it was he who paid the premiums thereon. The testimony of Mrs. Ida Sickles leads directly to the conclusion that she and the appellant were on criminally intimate relations before and after the death of her husband; that she and appellant formed a conspiracy to dispose of Sickles and live together, also to obtain money through his death by means of insurance upon his life, some of which was to be augmented in case his death was the result of accident; that in pursuance of the design mentioned she and the appellant procured the issuance of insurance policies on the life of Sickles by means of forged applications and fraudulent collusion with an insurance solicitor; that the applications were forged by the wife of deceased and the policies issued without his knowledge, appellant advising the transaction and being present when the act was done; that on the day of his death, deceased left his home going in the direction of the home of the appellant and was not seen alive thereafter by the witness; that she was informed by appellant that the deceased was injured by a horse and that she did not go to the deceased but accompanied by appellant to town to telephone for a doctor; that upon the appellant's suggestion the insurance policies mentioned were hidden in the mattress of the bed of the witness; that after the death of her husband she, in co-operation with appellant and William Franks, made proofs of death of deceased on forms furnished by the insurance companies. William Franks was a relative of Minor

(the appellant) by marriage and was an employee of Minor. According to the testimony of Franks, on the 21st of January, he and the deceased left Minor's house under the directions from Minor to hunt stock until dark and ride home after night, and as they came in to nail up the syrup millhouse, which was situated on Minor's premises about three miles from his house. At about dark he and Sickles went to the syrup mill and there found Minor traveling in a wagon which contained some turnips. According to the witness, he and Sickles went in the house after some hay, at Minor's request, and Minor followed them. Sickles reached for a bale of hay, and as he had it in his hands, "Minor grabbed him over the face * * * and had a handkerchief in his hand and threw Mr. Sickles down on his back and fell on top of him and just held him there." The witness smelled some chloroform. "When Minor threw Sickles down on his back, Sickles did not do anything. He made no noise except to groan. Sickles was held upon the floor by Minor for something more than ten minutes." Minor told the witness to assist in getting Sickles out of the house. The two picked Sickles up and carried him to the front of the house and laid him down. Minor tied one end of a rope to Sickles' foot and the other end to his saddle, which was on a wild horse. Minor tied a rope to Sickles' foot while Franks held the horse and then tied it to the horn of the saddle and told Franks to turn the horse loose. The horse dragged Sickles across the meadow for about a hundred yards, when the girth broke. Minor went out and took the rope off and put Sickles' foot in the stirrup of the saddle and told Franks never to breathe that; that if he did he would kill him. Franks said there were no bottles or boxes near the place that he knew of save that on the floor of the barn he picked up a box marked chloroform. Minor told him to burn it, but not having a match, he threw it in some weeds and looked for it later but failed to find it. Franks did not remain long after Minor had left but followed him to his house. Upon reaching the house Franks, according to directions previously received from Minor and in the presence of an inmate of Minor's house, told Minor to get a doctor as Sickles was badly hurt.

The verdict implies that the jury found that Allen was not an accomplice witness. The statement of facts, including Allen's testimony, reveals as coming from witnesses, who were not accomplices, in substance the following:

That appellant frequented the home of Sickles both before and after his death; that appellant had declared his intention

to separate from his wife and live with Mrs. Sickles, and that if the person to whom this intent was conveyed disclosed it he would be killed by the appellant; that he was instrumental in getting Sickles to insure his life in favor of his wife and paid the premiums on the policies; that he advised Mrs. Sickles to forge her husband's name on the applications for other policies of insurance on the life of Sickles on which Mrs. Sickles was the beneficiary, appellant paying the premiums; that after the policies were issued they were hidden by Mrs. Sickles; that appellant offered Allen part of the insurance money to induce Allen to aid in the collection of the insurance; that he and William Franks made oaths to the proof of death of Sickles, stating that he was killed by dragging by a horse; that appellant, about the time of the homicide, was seen by two witnesses near the place where the deceased was killed, appellant being alone in a wagon at the time; that he proposed to refute the testimony of this witness by false testimony to the effect that at the time he was at the place mentioned he was not alone but was accompanied by another person; that the evidence of the doctors, as well as others who saw the deceased after his death, excludes the truth of the theory that the deceased was killed by dragging, which was the cause of death reported by the appellant to Doctor Pickett, to Mrs. Sickles, and to the insurance company in the proofs of death; that he was seen before the homicide going in a wagon alone toward the place where the deceased was killed; that no other than the appellant was shown to have had any motive to kill the deceased, while appellant coveted the wife of the deceased and desired to profit by his death; that he and the wife of the deceased, who was a co-conspirator to take the life of the deceased, were, after his death, in possession of the fruits of the crime, namely, the policies of insurance, and co-operated with each other and with the accomplice Franks in their efforts to realize the insurance money.

In the indictment it was charged in substance that the appellant caused the death of Jim Sickles by causing him to inhale and swallow chloroform by holding and closing his mouth and nose and strangling and smothering Sickles so that he could not breathe, and by these means the instantaneous death of Sickles was effected. In connection with the submission of this issue the court instructed the jury in accord with the averments in substance as stated above.

Several doctors testified that practically instantaneous death could result from placing a cloth saturated with chloroform

over the mouth and nose of one so that he would not breathe but would take the chloroform into his lungs; that death might be produced in one or two minutes; that if death was instantaneous or practically so, it was not likely that the drug would leave blisters upon the skin; that if the chloroform was administered merely by inhalation and not by drawing the fluid into the lungs, that death would not result so quickly and that the drug would probably leave some blisters about the face. The volume of the testimony of the doctors precludes its quotation in detail in this opinion. One of the doctors examined the deceased at the place where he was killed some three or four hours after his death. The others examined the body after it was exhumed some three weeks after his death. All of them testified to the absence of any external evidence informatory of the cause of death. The lay witnesses who examined the body of the deceased while it was at the place where the homicide occurred gave testimony to the effect that the body exhibited no signs of bruises or broken bones or indications that it had been dragged. The same is true with reference to Doctor Pickett, who was called as a witness by the appellant and who, we understand, to have been the only doctor who examined the deceased before he was buried. Doctor Pickett testified that he had been informed that the death of the deceased was the result of having been dragged by a horse, and with that in mind he made an examination, but failed to find anything upon the body which would support that theory. He also said he found no evidence of strangulation or smothering, and that the eyes appeared normal. Some of the doctors testified that if there was strangulation or choking, it would likely be indicated soon after death by protruding eyes and dilated pupils. Others testified that if chloroform was administered in sufficient quantity and in a manner that would produce death in one or two minutes it would not, in their opinions, leave any signs which would enable a physician examining the body two or three hours after death to determine whether the death was caused by the administration of chloroform. The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that "there be other evidence tending to connect the defendant with the offense committed." Art. 718, C. C. P., 1925. Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated

fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If, by this rule, it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied. Underhill's Crim. Ev., 3rd Ed., Secs. 129 and 130; Meredith v. State, 85 Tex. Crim. Rep. 239; Wright v. State, 47 Tex. Crim. Rep. 433; Huggins v. State, 85 Tex. Crim. Rep. 205; Halbadier v. State, 85 Tex. Crim. Rep. 593; Middleton v. State, 86 Tex. Crim. Rep. 307; Walker v. State, 252 S. W. 543; Willman v. State, 99 Tex. Crim. Rep. 259. Owing to the length of the testimony adduced upon the trial, it has been necessary to summarize rather than to quote it. We have not undertaken to state all that bears upon the subject of corroboration, and space precludes a discussion at length. In the cases last cited above, and also in Willman v. State, 92 Tex. Crim. Rep. 77, and Walker v. State, 92 Tex. Crim. Rep. 296, are to be found facts quite analogous to those in the present record. In those cases the remains of Jack McCurdy were found upon a railroad track mangled by a train passing over the body. Henry, who was an accomplice, testified that McCurdy was killed at the home of Willman by a blow struck upon the head, and that Willman, Howard and Walker were the authors of the homicide and that they, together with Henry, had deposited the remains of the deceased upon the railroad track. The task of the state was to corroborate the witness Henry. As stated above, the remarks of the court in the various opinions mentioned are illustrative of its views upon the present record.

After the most thorough examination of the record of which we are capable, and consideration of the analysis of the facts contained in the able and carefully prepared motion for rehearing, the opinion has been formed and is here expressed that the court would not be justified by the record in declaring that the corroboration of the accomplice witness was not such as, in a legal sense, tended to connect the appellant with the murder of the deceased.

From bill of exception No. 3 it is made to appear that the District Judge, upon organizing the January term of the District Court, found that his predecessor had failed at the previous term to appoint jury commissioners to select grand and petit juries. A few days thereafter the regular term was adjourned and a special term of court called. Upon organizing the special

term the court appointed jury commissioners who selected the grand jury which found the indictment against the appellant. Appellant challenges the legality of the calling of the special term and power of the court to organize the grand and petit juries. We have had occasion to review like points raised in the case of Hunter v. State, No. 11023, not yet reported. Therein we called attention to the fact that the omission from the Code of Criminal Procedure of 1925 of the provisions relating to the calling of a special term of court was not destructive of the right and power granted to the District Judge by the Constitution and laws of the state to call a special term of court for the trial of criminal cases. Such power is found in the Constitution of the state, Art. 5, Sec. 7, and in Art. 1920 of the Revised Civil Statutes of 1925. In the statute it is expressly declared that at a special term called by the District Judge he may appoint jury commissioners, who may select and draw grand and petit juries in accord with the law. We do not deem the organization of a special term of court a matter of criminal procedure. It is a part of the organic law of the state. A phase of the same matter was discussed in Compere v. State, 295 S. W. 614; see also Bennett v. State, 95 Tex. Crim. Rep. 422; Ex Parte Holland, 91 Tex. Crim. Rep. 339.

Bills of exceptions Nos. 6, 7 and 16 complain of the refusal of requested special charges advising the jury that an acquittal must result if the death of the deceased was due to any cause other than that averred in the indictment. In view of subdivision 5 of the main charge in which the court (submitting the converse of subdivision 4 of the charge) instructed the jury that unless they believed that instant death of the deceased resulted from chloroform administered by the appellant an acquittal should result, it was not necessary to give the requested charges.

We have received no error in the refusal of the court to give special charge No. 11 on the subject of alibi.

The court affirmatively instructed the jury that Ida Sickles and William Franks were accomplice witnesses, and that their unsupported testimony would not warrant a conviction. Touching the witness Allen, the court, in his charge, called upon the jury to determine whether Allen was an accomplice witness. Allen's connection with the transaction seems to have been limited to engaging in unwarranted methods of issuing insurance policies. The jury, we think, was justified in concluding that he was not a *particeps criminis* to the murder of the

deceased.   The failure of the court to instruct the jury that he was an accomplice witness as a matter of law is deemed not error.

The refusal of the request to instruct the jury that if Franks implicated the appellant in the homicide in order to avoid being killed, to acquit, we think, was not error.   The coercion and duress which would raise such an issue is not found in the record.   See Willman v. State, 92 Tex. Crim. Rep. 77; also 99 Tex. Crim. Rep. 259.   Moreover, the requested charge is deemed to be upon the weight of the evidence.

The action of the court of which complaint is made in bills of exceptions Nos. 28 and 29 in permitting a hypothetical question to one of the doctors, in our judgment, reveals no error. The bills, as qualified, show that the question was based upon testimony which went before the jury and was permitted upon the assurance that the evidence upon which it was predicated would go before the jury.

The motion for rehearing is overruled.        *Overruled.*

### ON REQUEST FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant requests leave to file a second motion for rehearing.

No new points of law are presented and only the correctness of the conclusions upon the law and the facts heretofore. announced in our original opinion and that on motion for rehearing is questioned.

Appellant challenges the accuracy of two statements of facts in the opinion on rehearing, one being where we stated in substance that appellant signed the proof of death as a predicate for collecting the insurance on deceased.   We were inaccurate in that regard.   The witness Bailey did testify on direct examination that he took appellant's "acknowledgment to the death proof," and it was this evidence which led us into the inaccuracy pointed out.   On cross-examination the witness corrected his statement and said appellant made no affidavit.   The point in mind was not so much whether appellant actually made the proof of death, as it was that he was with deceased's wife and Franks on all occasions when they made the proof and was acting with them in collecting the insurance.   The other alleged inaccurate statement was that appellant attempted to fabricate testimony to the effect that someone was with him on the day of the homicide when the state's evidence was to the effect that he was seen alone in the immediate vicinity of the killing.

Upon this point the record shows that the accomplice Franks testified that appellant had told him no one had seen appellant going down to the scene of the killing, and that afterwards they found out some children had seen him go down there alone so appellant said he was going to get one Callicut to swear that he (Callicut) was with appellant. It was one or more of the Giles children who claimed to have seen appellant alone in a wagon in the vicinity of the killing, and who testified to such fact on the trial. After deceased's death appellant, in company with Callicut, went to the Giles home, and appellant told Mr. and Mrs. Giles that Callicut was with appellant at the time the children claimed to have seen him alone, to which statement of appellant Callicut then assented, but failed to so testify on the trial. Unless we misapprehend the record these facts justified the conclusion last complained of.

The record is voluminous and the proper solution of the problems presented, both as to the law and the facts, are not free from difficulty, but our best effort has been given in an attempt to reach a correct decision, the result of which has been reflected in what has been heretofore announced.

The request to file second motion for rehearing is denied.

*Overruled.*