HENRY REED v. THE STATE.

No. 15225. Delivered June 15, 1932.
Rehearing Denied October 12, 1932.
Reported in 53 S. W. (2d) 50.

The opinion states the case.

*Lockhart, Garrard & Brown,* of Lubbock, for appellant.

*T. L. Price,* District Attorney, of Post, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for six years.

The sufficiency of the corroboration of the accomplice witness is vigorously assailed. On the night of the 17th of June, 1931, the store of W. M. Yates was burglarized, and some merchandise and a .22 target gun were taken from the building. Appellant, Otto Knight, and Johnnie Kerns were jointly indicted for the offense. The state introduced as a witness Johnnie Kerns, an admitted accomplice, who testified, in substance, that the burglary of the store was committed by himself, Otto Knight and appellant on the night in question; that before sundown he, appellant and a woman by the name of Billie Vanderbilt went to the store together, and while there worked on a casing on their automobile; that they went from the store to a place not far away to see about buying some hogs; that they returned to appellant's home, reaching there shortly before sundown; that that night he, Knight and appellant went back to Mr. Yates' store, prized a window open, and took some merchandise and a .22 target rifle; that they had left the automobile 150 yards south of the store; that after burglarizing the store they carried the stolen goods to the automobile and drove to appellant's home, where they unloaded the stolen property; that appellant received the .22 target rifle (which the witness identified on the trial of the case as having come from the burglarized store) in the division of the spoils. The accomplice witness testified further that he and Otto Knight had spent a month and a half or two months on appellant's farm in his home prior to the day the store was burglarized, and that appellant had been in the house with him and Knight during the time. Approximately two months after the burglary, appellant's home was searched and a .22 target rifle, which Mr. Yates (the injured party) identified as being his property, was taken therefrom. Appellant was not in his home at the time the search was made. Otto

Knight, appellant's co-defendant, was at appellant's home at the time the search was made, and was arrested. Also there were living in appellant's home at the time a man whom he had employed to work on his farm, and two women who were doing the house work. The injured party testified that appellant came to his store on the evening before the burglary, in company with a man and a woman, came inside and purchased some gasoline from him, and that while there appellant talked to him quite a while. Other witnesses testified to having seen appellant in the store of the injured party the evening before the burglary in company with other parties.

Appellant testified, in substance, as follows: The accomplice witness, Johnnie Kerns, and Otto Knight came to his farm about the 22nd of June, 1931, and remained there two nights and a day. At the time there lived in his home a man by the name of Shelborn and two women, who were doing the house work. His family lived in town. He spent most of his time in the house on the farm with Shelborn. He was not at the store of the injured party in company with Johnnie Kerns, the accomplice witness, and Billie Vanderbilt on June 17, 1931. He did go to the store on June 14, 1931, with M. O. Sanders and his wife. On June 14, 1931, he left for Pampa, Texas, and remained there until the 21st of June. He was not in the vicinity of the store on the occasion of the burglary, and had nothing to do with it. The morning after he returned to his home from Pampa, Otto Knight and Johnnie Kerns came to his farm early in the morning, and remained there that day and the next night. From that time until some time in August these parties came back to his farm two or three different times. He had seen the target gun introduced in evidence, or one like it, in Otto Knight's car. He had never had the gun in his possession or claimed it, and knew nothing about where Knight got the gun.

On crossexamination, appellant testified as follows: "I saw a gun similar to this one in Otto Knight's car. I did not know that the officers got this gun out of my home. I made a statement along soon after this to B. M. Parker that the gun they took out of my home my boy had bought it. His gun was missing about that time. If that was the boy's gun then it could not have been this gun. I did not say that the one that the officers got out of my home was the gun my boy bought; I said that the boy's gun, the one he had is gone and is still gone. It was gone along about the time the officers made the search. As to how it got away, I guess they carried it off. They carried off a lot of stuff. * * * My boy got the gun from Ben Barrington. There was no target gun on the place that I know of except the gun my boy had. * * * It stayed on my place part of the time. I think it was there when the officers made the raid. It was a .22 target gun."

On redirect-examination, appellant testified that he was present when

Otto Knight tried to sell a similar gun to the one introduced in evidence to a man by the name of Luallin. Further, he testified that the gun introduced in evidence was not the gun his boy owned. Appellant's witness Luallin testified that he was at appellant's home two or three days before the officers made the search; that Otto Knight was there and tried to trade him a gun similar to the one introduced in evidence. He testified, further, that at the time Knight approached him, Johnnie Kerns was also present. Appellant did not call his son to testify as to the loss of a gun.

In rebuttal, the state introduced witnesses who testified that they saw appellant at the store of the injured party on the evening of June 17th. Further, a witness for the state testified that appellant came to her house on the day before the burglary that night with a man and a woman in an automobile, and that appellant said to her he wanted to see her husband about some hogs and cows. She said that she lived two and one-half miles from the store of the injured party. A second witness testified that he saw appellant at the store of the injured party on the evening before the burglary that night, and spoke to appellant.

We are unable to reach the conclusion that the accomplice witness was not sufficiently corroborated. The law forbidding a conviction upon the uncorroborated testimony on an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be other evidence tending to connect the accused with the offense committed. Article 718, C. C. P.; Minor v. State, 108 Texas Crim. Rep., 1, 299 S. W., 422. We quote from Minor v. State, supra, as follows: "Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied."

We observe from the testimony, aside from that of the accomplice witness, that the store was burglarized on the night of June 17, 1931; that appellant, a man and a woman were at the store on the evening before the night of the burglary, in an automobile; that approximately two months after the burglary a .22 target rifle was found in appellant's residence on his farm, and positively identified by the injured party as being his property; that the accomplice witness Kerns, and Knight, spent some time in appellant's home, although they did not work there; that appellant stated shortly after the search that the gun taken from the house by the officers belonged to his son. In connection with these facts and circumstances, it is observed that if the state's testimony was to be believed,

appellant's statement to the effect that he was in Pampa on the night the offense was committed was fabricated. Again, appellant did not call his son to substantiate his claim that shortly after the search had been made his son had missed at .22 target rifle. If the jury believed the testimony to the effect that the alibi of appellant was fabricated, that is, that he was not in Pampa on the occasion in question, they were authorized to conclude that the evidence touching the alibi showed an effort and scheme on his part to shield himself from the force and effect of the testimony tending to connect him with the burglary. Viewed in such light, the testimony destructive of the truth of the defense of alibi presented a criminative circumstance against appellant. See West et al. v. State, 116 Texas Crim. Rep., 468, 34 S. W. (2d) 253. Considering the combined and cumulative weight of the evidence furnished by non-accomplice witnesses, the opinion is expressed that there was before the jury proof confirming the testimony of the accomplice to material facts tending to connect appellant with the commission of the offense. See Fetters v. State, 108 Texas Crim. Rep., 282, 1 S. W. (2d) 312.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.