CHARLIE LUCAS V. THE STATE.

No. 20570. Delivered November 8, 1939.

The opinion states the case.

*Denman & Fowler,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from conviction for assault to murder without malice. The penalty assessed is one year in the penitentiary.

Some months prior to the commission of the alleged offense the appellant and his wife had separated. There had been talk in the community, at least by the appellant, about the associations of the prosecuting witness, Carl Pye, with the wife of the appellant. The extent of this talk and their associations were issues upon which the witnesses differed. On the date of the alleged offense, Carl Pye and Offie Champion went to the home of Mrs. Lelia Lucas, the mother of the appellant, for the professed purpose of looking at a shotgun which a member of that household wanted to sell. After they had looked at the shotgun, the parties stepped out of the house and to the front, some one of them holding the gun. In the meantime the appellant, who lived a near neighbor to his mother, had come from the business section of the village to his residence, procured a high-powered rifle, and upon approaching the home of Mrs. Lelia Lucas and seeing Pye with others at the front of the house, began shooting. The bullets went far astray, the first one entering the home of a neighbor. Neither of the two shots fired struck Pye, nor is there testimony that either of them came within close range of him.

The witnesses present, including the mother of the appellant, were called, and testified for the State. The appellant testifying in his own behalf, claimed that he had separated from his wife because of her relationship with Pye;

that a few minutes prior to the occurrence he had been cursed and abused by Pye and was at the time much disturbed over the incident. He declared that he returned to his home for another purpose and seeing Pye at the home of his mother and fearing that he might undertake to become "influential" with appellant's daughter who resided there, he procured his gun and started toward the house. As he approached, he declared that he saw a shotgun, either in the hands of Pye or available to him, and that he thereupon fired two shots; that he was a good shot with a rifle and that he did not try to hit Pye and had no intention of taking his life. His state of mind was accounted for by the abuse which he had just received from Pye, together with the belief that Pye had wrecked his home and caused him to drive his wife away.

Harold Lucas, the son of the appellant, who was seventeen years old lived with his father and testified in his behalf. He told of the visits of Pye to his mother during years past and particularly of one occasion when he found them in bed together. These facts he did not communicate to his father or any other person so long as the mother remained in the house but had, prior to the date of the alleged assault, communicated them fully to his father.

There was evidence upon which the jury might have acquitted the appellant had they given full credit to his statements.

When the appellant had rested his case, the State called Mrs. Lelia Lucas in rebuttal. She had previously testified against her son and upon being recalled, testified in answer to questions by the District Attorney that she had known the wife of Charlie Lucas for thirty-seven years; that she had lived in the house with the witness after her separation from Charlie for a period of from four to six weeks. She said she knew the cause of the separation; that "the main thing was that he would not make her a living, and he would come in home cursing and leave cursing, and then he got to knocking her about and kicking her—hitting her over the head, and it got to where she would come to my house at nine or ten o'clock at night in her night clothes crying."

The record contains but one bill of exception which may be considered. It is contended by the State that this bill is so qualified by the court as to show that no error was committed. Appellant's counsel took no exception to the qualification which the presiding judge made to this bill. If this bill is sufficient to bring the question before the court for consideration, it presents the only matter upon which we are asked to reverse

the case. If the general rule, which is well settled, that a bill of exception which has been qualified by the presiding judge without objection from the appellant, must be considered in the light of such qualification is to govern in this case, then we must affirm the judgment of the trial court on the ground that there is no bill showing a reversible error. If the trial court had simply qualified the bill, there could be no doubt about the correctness of the application of the rule in this appeal. However, the court added this parenthetical expression, "See Statement of Facts."

The court having referred to the statement of facts, it is proper that we examine same as a part of his qualification. Romero v. State, 108 Tex. Cr. R. 240, 299 S. W. 904; Rutherford v. State, 102 Tex. Cr. R. 310, 277 S. W. 669; Coulson v. State, 102 Tex. Cr. R. 8, 277 S. W. 135; Miter v. State, 100 Tex. Cr. R. 455, 273 S. W. 565.

From our examination of the statement of facts as referred to in the qualification of the bill, we find that the presiding judge was in error in his qualification and that the testimony was elicited from the witness by the State over the objection of appellant's counsel instead of being brought out by appellant as stated in such qualification. That the evidence was harmful to the appellant there can be no doubt. It presents the dramatic spectacle of a mother giving her opinion and conclusion of a transaction in very damaging terms for the purpose of sending her son to the penitentiary. The unnaturalness of this testimony must have attracted the attention of the jury in an unusual way. The state of the case makes it quite possible that the verdict of the jury turned on this testimony. It appearing that the testimony was the opinion and hearsay statements of the witness, it was improper evidence, was timely objected to and should have been excluded.

Because of this error, the judgment is reversed and the cause remanded.