**Billy Dale POWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 53823.**

Court of Criminal Appeals of Texas.

Nov. 23, 1977.

State's Motion for Rehearing Denied Feb. 8, 1978.

---

Thomas V. Priolo, Amarillo, for appellant.

Charles W. Darter, Dist. Atty., Memphis, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a trial before a jury appellant was convicted of burglary of a building. Punishment was assessed at fifteen years.

Appellant by ground of error challenges the sufficiency of the non-accomplice evidence to corroborate the testimony of the accomplice witness Jewell Dodson, also under indictment for this offense.

Fred Cordell, the complaining witness, testified that during the night of October 4, 1974, his store, the Lazy F. Western Wear, in Childress was burglarized and his 370 pound safe containing over $18,000 in cash and other valuables was stolen. Outside the back door, through which the safe was "scooted," he found two boards "approximately three foot long, cut with a forty-five on each end that looked like it was just right to put on the back of a pick-up to scoot that safe right upon it." He gave

these boards to Ranger Leo Hickman, who was investigating the burglary. They were introduced in evidence as State's Exhibit 10.

Cordell had been acquainted with appellant when appellant was an employee of the Elks Lodge in Childress, probably in 1972, but had not seen him since, and had never seen him in the store.

There was no evidence before the jury that the safe or any of the contents were ever recovered.

Jewell Dodson took the stand as a State's witness. She was under indictment for this same offense and before she testified the court granted the State's motion that she be given full immunity from prosecution for this offense in the State's courts "and from Federal prosecution insofar as this court can grant such immunity." Dodson testified substantially as follows:

She was acquainted with appellant when he was employed by the Elks Lodge in Childress in 1972 and lived with him for a while in Childress. At times in 1974 she heard appellant talk about money in the safe in the Lazy F and wonder if the money was still kept in the safe "of Fred Cordell's store," and heard him mention "hitting" that safe. On October 5, 1974 about 12:30 a. m. while she was alone at Tony Osborne's home in Amarillo, appellant and Bud Dudley brought the safe in question to Osborne's home in a pick-up truck and carried it in the house. Later Tony Osborne came to the house. The safe was opened "with drills, and chisels, and hammers, tools" by appellant and Osborne, and approximately $21,000 in money was taken from it and divided between appellant, Osborne, and Dudley, with each getting approximately $7,000. Many of the papers in the safe were destroyed and the safe was returned to the pick-up and taken away.[1]

After the safe had been taken away, according to Dodson, she and appellant left Amarillo and, after going to several other places, eventually went to Denver, Colora-

1. The record is silent as to what happened to it thereafter. None of the contents were recovered.

do. In their travels they avoided Childress because they heard an arrest warrant had been issued for them. In December, 1974, they were arrested in a mobile home or trailer in Denver on a warrant from Childress County issued in connection with this burglary case.

In order to corroborate the testimony of the accomplice witness Dodson, and to connect appellant with the commission of this offense, the State introduced evidence substantially as follows:

Arlie Bewley testified that in October, 1974, he operated Lil Abner's, a club in Amarillo. He had removed the boards of an "electric dance floor" and stored them in a separate building of his. Some of these boards were partially painted blue and were covered with plexiglass. In October, appellant worked for Bewley as assistant manager of Lil Abner's. Bewley did not remember whether appellant worked for him "all during October, 1974." His duties included bar tending, I.D. checking, floor manager, repair man, and cleanup man. He did not have a key to the warehouse where the boards were stored and, so far as Bewley knew, he did no work there. The only keys to that building were kept by Bewley and Tony Osborne, manager of Lil Abner's. Appellant had not assisted in making the repairs to the dance floor or storing the lumber. There was nothing to indicate the building had been broken into in order to remove any boards. In addition to appellant and Osborne, one other male and six females were employed by Bewley at Lil Abner's club.

In October, Ranger Hickman, while investigating a burglary in Childress, brought two boards, S.Ex. 10, to Bewley, which Bewley recognized as being of the same and similar type as the boards in his old electric dance floor. Hickman took some of the boards which were found in the warehouse with him, which were subsequently introduced as S.Ex. 8.

Leo Hickman, a Texas Ranger, testified that in October he was called upon to investigate the burglary at Fred Cordell's Lazy F. Western Wear in Childress and the theft

therefrom of a safe. In an alley back of the store, he noticed two boards, two by eight, lying on the ground, with indications they had been used in loading the safe onto a truck. No fingerprints were found in the store or on the boards. On October 18, he took these boards, being S.Ex. 10, to Amarillo, where at Bewley's warehouse he compared them with boards stored there. He found they had the same kind of black substance, plexiglass, and blue paint. Photos of the boards taken from Bewley's were introduced in evidence as S.Exs. 3–7, inclusive, for comparison with S.Ex. 10. Three boards taken from Bewley's by Hickman were in evidence as S.Ex. 8. An angle bracket was in evidence, S.Ex. 9, for comparison with grooves in S.Ex. 10. Evidence showed the angle bracket fit the grooves and holes in 10. Additionally, shavings from S.Ex. 8 and other boards found in the warehouse of blue paint and the black substance were taken, and delivered to the Department of Public Safety laboratory. Hickman could not testify on his own knowledge whether appellant was working for Bewley at Lil Abner's during his investigations there.

Hickman testified that on December 11, 1974, he went to Denver, Colorado, with a warrant for appellant and Jewell Dodson, who was with him, and arrested them. He was not questioned as to the details of the arrest, testifying in that respect only that the first time he met either appellant or Jewell Dodson was December 11, 1974, on which date he arrested them in Denver, Colorado.

Wayland Wright, assistant chief of police of Childress, testified that in investigating the burglary at the Lazy F. Western Wear October 5, along with Ranger Hickman, two boards were found in the alley behind the store with marks indicating the safe had been rolled over them and loaded with their help in a pick-up truck. He definitely identified S.Ex. 10 as being the same boards. Blue shavings and some black shavings were secured from the boards and taken to the Department of Public Safety laboratory. Other similar shavings from boards

found at Bewley's warehouse were also taken to the laboratory.

Dennis Johnson, a chemist with the Texas Department of Public Safety, testified that he made a chemical analysis of the wood shavings brought to him by Hickman and Wright. The black tar-like shavings were small pieces of plexiglass. The analysis he made was for the purpose of determining if the blue paint on two of the separate exhibits[2] was the same, and also whether the black material on the same separate exhibits was the same. His examination "indicated" they were. He was not willing to testify they had the "same source," but stated they could have.

Appellant did not testify.

The above summary constituted the evidence introduced before the jury[3] in the State's efforts to corroborate the testimony of accomplice witness Jewell Dodson, and tends to connect appellant with the commission of the burglary.

We quote as follows from *Moore v. State*, Tex.Cr.App., 521 S.W.2d 263:

"The test for determining the evidence required to support a conviction in addition to the testimony of an accomplice has been stated by this Court in numerous opinions as follows:

" 'The test of the sufficiency of such corroboration is to eliminate the evidence of the accomplice from consideration and then to examine the evidence of other witnesses to determine if there is inculpatory evidence, evidence of an incriminating nature which tends to connect the accused with the commission of the offense. Merely showing an offense occurred is not sufficient.' " *Odom v. State*, Tex.Cr.App., 438 S.W.2d 912; *Edwards v. State*, Tex.Cr.App., 427 S.W.2d 629; *Anders v. State*, Tex.Cr.App., 501 S.W.2d 665.

" 'The corroborative testimony need not supply direct evidence; it must only tend to connect appellant with the crime.' *Cherb v. State*, Tex.Cr.App., 472 S.W.2d 273."

See also *Black v. State*, Tex.Cr.App., 513 S.W.2d 569; *Chambers v. State*, Tex.Cr. App., 508 S.W.2d 348; *Tompkins v. State*, Tex.Cr.App., 501 S.W.2d 132.

Jewell Dodson, who was under indictment for this same offense when she testified as a State's witness against appellant, was an accomplice witness as a matter of law and the court so charged the jury. *Etheredge v. State*, Tex.Cr.App., 542 S.W.2d 148; *Hendricks v. State*, Tex.Cr. App., 508 S.W.2d 633. Eliminating her testimony, we find no inculpatory evidence of an incriminating nature which tends to connect appellant with the commission of this offense.

Without her testimony, there is no evidence that appellant was in Childress on the night of the burglary. None of the stolen goods; i. e., the safe or any of its contents, were shown to have been in appellant's possession at any time after the burglary. Assuming sufficiency of the evidence to prove the boards found at the scene and used to load the safe on a truck; i. e., S.Ex. 10, were taken by the burglars from Bewley's warehouse in Amarillo, there was no evidence connecting appellant with these boards. Bewley testified appellant did not help in disassembling the electric dance floor, or storing the lumber therefrom, and that so far as he knew appellant had no more access to the lumber in the warehouse than any other of his employees or anybody else. The fact that appellant was an employee of Bewley's with duties confined to Lil Abner's, in a building totally apart from the warehouse, was not sufficient to tend to connect him with these boards or with the commission of the offense.

There was no evidence other than from Dodson that appellant took flight from Childress on the morning of October 5,

---

**2.** The boards found in the rear of Cordell's store in Childress and the boards taken from Bewley's warehouse in Amarillo.

**3.** The trial court sustained appellant's motion to suppress evidence of certain articles found in the trailer when appellant and Dodson were arrested.

Bewley, his employer, testified that he did not remember whether appellant worked for him all during October, 1974, or not. Ranger Hickman could not testify from his own knowledge whether appellant was working at Lil Abner's in Amarillo when he made his investigation there on October 18, two weeks after the burglary. An inference of guilt may be drawn from flight "where there is some circumstance to show the accused is moving out, or running." *Hunter v. State*, Tex.Cr.App., 530 S.W.2d 573, at p. 575, citing *Jones v. State*, Tex.Cr. App., 481 S.W.2d 900; *Woods v. State*, Tex. Cr.App., 480 S.W.2d 664; *Israel v. State*, 158 Tex.Cr.R. 574, 258 S.W.2d 82. Except for the testimony of the accomplice witness, the only evidence of flight was the testimony of Ranger Hickman that two months and a week after the burglary he and local officers arrested appellant and Dodson together in Denver, Colorado. This testimony did not tend to connect appellant with the commission of this offense.

For the reasons heretofore stated, appellant's contention of insufficiency of the evidence to corroborate the testimony of Jewell Dodson, the accomplice witness as a matter of law, is sustained.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.