## PEDRO RODRIQUEZ v. THE STATE.

### *No. 185. Decided June 3.*

**1. Murder—Evidence—Map or Plot of Town.**—On a trial for murder, a diagram, a map or plot of the town in which the homicide occurred, made by the county surveyor and shown by him to be correct, is proper and legitimate evidence to explain the testimony of witnesses, and enable the jury to better understand and apply the evidence.

**2. Same—Acts and Conduct of Defendant Immediately Preceding the Homicide.**—On a trial for murder. evidence was properly admitted to show that about thirty minutes before the shooting, defendant, with his hat pulled down over his face, approached his codefendant, whereupon they walked off together in the direction of the store house of the deceased, near which he was shot and killed.

**3. Same—Acts and Conduct of Deceased Immediately Preceding the Homicide.**—Acts of the deceased in leaving a crowd of young ladies shortly before the homicide, remarking, "that he was going to his store;" his going to the store, lighting a lamp, remaining a few minutes; that about the time he left his store to return to the plaza, defendant and his codefendant were seen to change their position from the opposite side of the street, where they had been in close conversation. and that the deceased was shot within about fifty steps of the store, was admissible as evidence; and if deceased's remark above mentioned, to the young ladies, was inadmissible, it can not be seen how its admission was calculated to injure defendant.

**4. Same—Acts and Conduct of Codefendant Immediately Preceding the Homicide.**—Where it was shown by the evidence, that defendant and his codefendant were seen to meet on the plaza and go off together in direction of the store house where the killing occurred : *Held*, it was not error to permit a witness to testify as to the acts of the codefendant; that said codefendant was at witness' roulette table on the plaza; deceased was on the plaza about ten minutes before he was killed. "M., the codefendant, was at my roulette table when deceased left the plaza. M. first played at the roulette table about three-quarters of an hour. went away, a short while afterwards returned, played about ten minutes, left again, and in about ten minutes heard the shot."

**5. Same—Subsequent Facts Going to Establish the Complicity of the Codefendant.**—Where, on the morning after the homicide, a deputy sheriff cut a bullet from the body of deceased, went to the residence of codefendant and found a hidden carbine, and on the trial was permitted, over objection of defendant, to identify and exhibit the gun and bullet to the jury: *Held*, the evidence was admissible; the State's theory that the parties had acted together, and that they were the persons who did the killing, having been sufficiently established. It was not error to exhibit the gun and bullet to the jury.

**6. Amending the Record Entry as to Swearing Officers to Summons Jurors.**—It was not error to permit the entry in the minutes of the court to be amended and corrected by the clerk so as to show that the deputy sheriffs, who were sworn to summons jurors, were properly sworn and instructed in accordance with the statute.

**7. Order for Special Venire — Entry of Nunc pro Tunc.**—Where an order for a special venire is entered on the court's docket, but the clerk has omitted to make such entry upon the minutes of the court, and the same was called to the attention of the court after defendant was convicted, *held*, that the court had ample authority to make the minutes speak the truth, and to cause the entry of the order nunc pro tunc, as was done.

APPEAL from the District Court of Webb. On change of venue from Duval. Tried below before Hon. A. L. McLANE.

A severance having been taken by the parties, the codefendant, Molina, was tried and convicted; and the venue of the case as to this defendant was changed to Webb County from Duval County; where, having there been placed upon his trial, defendant was convicted of murder in the first degree, and his punishment fixed at a life term in the penitentiary.

A concise statement of the substance of the salient features of the evidence is as follows:

Thomas Henderson, the deceased, was a merchant in the village of Benavides, Duval County. He was killed between 10 and 11 o'clock p. m., in the street, about fifty feet from his store house; on the night of the 19th of September, 1892, by a gunshot wound, which penetrated his forehead between the eyebrows. There were no eye-witnesses to the killing. A Mexican fiesta was held in the village that day, and was still in operation upon the plaza at the time of the killing. Deceased had been seen upon the plaza a short time before he was killed, talking to some young ladies. When he left them, he remarked that he was going to his store. He was seen to go to his store, unlock the door, light a lamp, and after remaining a short while, come out, lock the door, and start off, whistling, up the street. In a short while a scuffle and choking noise was heard, and then a shot. A party was seen and heard running from one direction from the place of the killing, and the codefendant (Molina) was also seen and recognized, walking from that direction very deliberately, and but a short distance from the scene. His tracks, which were measured, found, examined, and identified, were followed the next day to the rear of some lots into which he had jumped, and into his own lot.

When his house had been reached that night by parties looking for the murderers, he had a saddle in his hands and his horse was hitched in the back of his lot. . He was arrested that night, and a key found on his person which would unlock the door of deceased's store. The next day after the killing a number 44 carbine was found under the mattress of a bed in Molina's house, which had been recently discharged. On the morning after the killing the deputy sheriff cut the bullet out of the back of the head of deceased, and it was a number 44 bullet, and fitted the carbine found at Molina's. This carbine and bullet were produced at the trial of the defendant, and, over his objection, were exhibited and identified to the jury. Defendant and Molina were seen together several times on the night of and just before the killing. Their acts and conduct arrested the attention of others. They left the plaza just before deceased did; were seen in close conversation on the opposite side of the street after deceased had entered his store; were seen afterwards to change their position.

The man who was seen running away from the scene of the killing had on a high-crowned, chocolate-colored Mexican hat and white-looking pants. It was proved that defendant wore a hat of that description and pants of that color on that night. The tracks of this party, made as he ran from the scene, were found, examined, and trailed near to the house of Juan Moreno, where defendant lived. The tracks were measured, and the shoes by which they were made were old and broken in such manner as to make the track a peculiar one. · On the morning after the murder, the defendant went out of the village some ten miles, to the ranch of Juan Moreno.

Moreno had a stepson named Gregorio Rios, 10 or 12 years of age, and · his testimony for the State was as follows: I live in Benavides and am a stepson of Juan Moreno, and live at his house. On the night Henderson was killed I was at the plaza, and when I heard the shot I went home and found Pedro Rodriquez on his pallet asleep, and I slept with him that night. Next morning Pedro killed a goat and went away. In the · evening of that day my father sent me out to his ranch to tell Pedro to come back to Benavides. I left on horseback, and got to the ranch about dark, but did not find Pedro there. Next morning he came to the ranch, and I delivered to him my father's message, and loaned him a horse to come back to town on. Just before leaving the ranch, Pedro asked me to change shoes with him, and I did so. He put on my shoes and wore them · away, and I wore his shoes. He did not say why he wanted to change shoes. I know the shoes shown me by the district attorney (the shoes being the same shoes worn by the witness). They belong to Pedro, and are the same shoes I had on when Manuel Resandes took me to Justice Vall's. When I say Pedro, I mean Pedro Rodriquez. Pedro had on the shoes

the night Henderson was killed.  He has no others.  Defendant and I wear number 6 shoes.

On the trial, the county surveyor of Duval County was permitted, over objection of defendant, to exhibit and explain to the jury a diagram or plot or map of the town of Benavides, made by him a month after the killing, which fully showed the location of the various portions of the town, together with the prominent objects of interest mentioned by the witnesses in the testimony.

*Winslow & Thompson, John A. Valls,* and *S. H. Woods,* for appellant, filed a very able and elaborate brief.

*R. L. Henry,* Assistant Attorney-General, for the State

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

1.  The court did not err in admitting in evidence the map or plat of the town in which the homicide occurred.  The diagram was made by the county surveyor, and shown by him to be a correct map of the town.  This was proper and legitimate, not only for the purpose of explaining the testimony of the witness and rendering it more intelligible than it would otherwise have been, but also for the purpose of enabling the jury to better understand and apply the evidence with reference to the various localities spoken of by the witnesses.  The State v. Lawler, 28 Minn., 216, 218; Shook v. Pate, 50 Ala., 91, 92; Curtis v. Ayrault, 3 Hun, 487; Johnston v. Jones, 1 Black, 209; Thomp. on Trials, sec. 870.

2.  About thirty minutes before the deceased was shot, defendant, with his hat pulled down over his face, approached and touched his codefendant, Molina, whereupon they walked off together in the direction of the store house of deceased, near which he was shot and killed.  This evidence was properly admitted.

3.  The witness Valls was permitted, over defendant's objection, to state that deceased left a crowd of young ladies shortly before the homicide, and went in the direction of the store, remarking as he did so, that he was going to his store.  Upon reaching his store, he lighted a lamp, and after remaining a few minutes, started on his return to the plaza.  While deceased was in the store, defendant and Molina were standing on the opposite side of the street in close conversation.  About the time he left the store, defendant and Molina changed their position, and within about fifty steps of the store deceased was shot.  The evidence was admissible; but if his remark to the young ladies was inadmissible, we fail to see how, under the facts, it could have injured the defendant.

4.  Nor was it error to permit the State to prove by Gongora, that Mo-

lina was on the plaza at a roulette table, and left it about an hour prior to the homicide. It was shown that he was on the plaza shortly afterwards, and that while there, the defendant approached him and they left together in the direction of the deceased's store and the place where the killing occurred. The witness testified, that " The deceased was on the plaza about ten minutes before he was killed. Molina was at my roulette table when deceased left the plaza. When Molina was first at my table that night, he played about three-quarters of an hour, and then went away. A short while afterwards he came back, and then played about ten minutes and left again, and about ten minutes later I heard the shot. I did not see Molina go off with any one, but I was busy watching the game."

5. On the morning subsequent to the homicide, Benavides, a deputy sheriff, visited the scene of the homicide, cut the bullet from the body of the deceased, went to Molina's residence, found a carbine hid between the mattresses on his bed, and on the trial of this case the gun and bullet were identified and exhibited to the jury. This was objected to, because defendant was not seen in possession of the gun, and because the evidence was calculated to mislead the jury.

The State's theory, that defendant and Molina acted together, and were the parties who did the killing, was sufficiently proved to authorize the admission of this evidence. If they did the killing, it was immaterial which had or kept the gun, or in whose possession it was afterwards found. Nor was it error to exhibit the gun and bullet to the jury. Hart v. The State, 15 Texas Cr. App., 202; King v. The State, 13 Texas Cr. App., 277; Jackson v. The State, 28 Texas Cr. App., 370; Levy v. The State, 28 Texas Cr. App., 203; Bryant v. The State, 18 Texas Cr. App., 107.

6. The court caused the clerk to make entry on the minutes, that certain deputy sheriffs were sworn as required by the Revised Statutes, article 3056, and subsequently, over objection of defendant, amended the order so as to show, in addition to being sworn, that they were duly instructed in regard to their duties in summoning jurors. If it be necessary to make entry of such proceedings, then it is certainly within the power of the court to correct the record in accordance with the facts. It is not denied that the officers were properly sworn and instructed in accordance with the statute.

7. On the 10th of January the special venire was ordered in the case, and was so noted on the court's docket, but the clerk omitted to make entry of such order upon the minutes. This omission was not called to the court's attention until subsequent to the defendant's conviction, at which time the court caused the proper order to be entered nunc pro tunc. The objections urged were, that the order was not made in the mode, manner, and time required by law. In support of these objections, we are referred to the Steagald case, 22 Texas Criminal Appeals, 464. This case

has been expressly overruled by the late case of Williams v. The State, 29 Texas Criminal Appeals, 90, in which it was said, that "the correct rule on appeal is, that where the record is silent as to such order, where no objection was taken in limine that such order was not made, where the record shows that a jury was empanelled under a special venire, it will be presumed that such order as the law prescribed was made and entered, or that it was waived by defendant." In so far as the question here raised is concerned, we are clearly of opinion, that the court had ample authority to make the minutes speak the truth, and to cause the entry of the order nunc pro tunc, as was done. The court made the order for the special venire, and at the proper time.

8. The charge fairly and fully presented the law of the case. The conviction is supported by the evidence, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.