### E. L. McCarty v. The State.

No. 22125.  Delivered May 13, 1942.
Rehearing Denied June 26, 1942.

The opinion states the case.

*Penn J. Jackson,* of Cleburne, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted by a jury of stealing three head of cattle belonging to Ed Yarbrough and sentenced to two years in the penitentiary.

The indictment alleges the theft of the cattle in question on the third day of August, 1941. The State relies chiefly on the testimony of a sixteen-year-old boy named Williams who is by his statement an accomplice. The appeal presents but one question for our consideration and that is whether or not there was sufficient evidence to corroborate the witness in the essential elements of the offense for which this conviction was had.

Vernon McCarty, a nephew of the appellant, was also charged with the offense and the opinion this day handed down reversing his case is to an extent the same as herein presented, but the corroborative evidence relied upon by the State to connect this appellant with the sale of three head of cattle in Fort Worth in no way connects Vernon McCarty therewith and to that extent the evidence in this case is different. Likewise, the flashlight that was found in the pasture where the cattle were loaded was not shown to have been in the possession of Vernon McCarty.

The witness Williams testifies that on August 3rd he was attending a reunion at the town of Eulogy; that during the day he was drinking considerably and that he drank some beer that night. He testifies that he met up with appellant and went with him to his house about four o'clock in the afternoon,

which was Sunday. Later, Vernon, who lived in Fort Worth, came and was in a Ford V-8 Pick-up. The three decided to go over to the ranch of Ed Yarbrough and get some cattle. It was after dark when they started. They entered the place near the home of the witness Mears at probably nine or ten o'clock at night and it was one o'clock in the morning before they found any cattle. When they did so they hemmed them up in the corner of the ranch and loaded three of them. From there they went to Brazos Point where the appellant got in his own car. The witness and Vernon reached Fort Worth at about 5:30 Monday morning where they put the cattle in the stockyard pens and sold them. Later appellant arrived, got the check in the sum of $115.95, and went to a drug store where he cashed it. Appellant gave the witness $10.00, and $50.00 to Vernon McCarty. The witness knew nothing about appellant having a flashlight when they were loading the cattle nor about him losing it. He learned later that one was found there. The witness was arrested some time after the date of the theft and while under arrest confessed his part in the theft and involved the other two. After this he wrote a letter to appellant which was introduced in evidence saying that he lied on him; that he had to tell something to get out of jail and further saying that he would not stick to it, but would tell the truth next time even if they kept him in jail. Other witnesses testified to similar statements being made verbally by the witness.

As we glean from the record, the facts which are probably relied upon by the State to corroborate the witness and as circumstances to connect the appellant with the theft are as follows:

A young lady whose name was mentioned testified that appellant on the Sunday afternoon in question asked her to tell Melvin Williams that he wanted to see him and she did so. Jesse Mears, who lived a short distance from the place where the witness Williams said they entered the ranch, testified that about dusk on the night of August 3rd he saw an automobile enter the ranch; that he doesn't remember whether the lights were on or not and he could not see the car well enough to identify anyone in it or to describe the car. At about 10 o'clock that night he heard the cows bawling as if disturbed by someone and this kept up during the entire night. In contrast with this it will be noticed that the witness Williams said it was dark when they started to the ranch and that they didn't find

any cattle until about one o'clock in the morning. He didn't testify as to any noise or disturbance that the cattle were making. Mears was within one hundred yards of the car and says it did not have a trailer and he could not say it was a truck, "it was just an automobile, but it might have been a pick-up truck."

A man in charge of the ranch testified to finding a flash light on the ranch near where Williams said the cattle were loaded. This was produced in court and offered in evidence. Bill Powell was called as a witness by the State and testified that he lived near appellant and operates a service station at Brazos Point. At some time which he could not fix with reference to the date of the theft of the cattle he loaned appellant a flashlight out of a stock of twelve which he had carried and which he says was similar to the one found in the pasture. He could not say that the one introduced in evidence was that flashlight. He had sold a dozen and was unable to identify it as either one of them. A day or two after he made the loan of the flash light appellant returned and said someone had stolen it from his car and paid the witness for it.

The State then offered proof of the sale on August 4th by appellant of three head of cattle, all of which is admitted by appellant, but the only description given was that they were white faced and had no marks or brands. No one in connection with the stockyards in Fort Worth identified the witness Williams as being present there with appellant, nor does anyone else corroborate his story that he so much as went to Fort Worth on that occasion.

Appellant, testifying in his own behalf, gives rather a weak account of his purchase of the three head of cattle which he sold in Fort Worth from a party on the market square in the City of Cleburne and of his arrangement to have Vernon McCarty take them to Fort Worth. He denied in toto the story given by the accomplice; denies the theft of the cattle and his evidence is corroborated both by his wife and by Vernon McCarty.

It will be noted that the story of the flashlight, while a circumstance in the case, in no way corroborates the evidence of the accomplice witness. The witness Mears gives nothing that would in any way help the State in this respect. The evi-

dence of the young lady was explained by the appellant who said that Williams was doing a lot of cursing and he called out as a friend and admonished him to stop it. Nobody testifies to corroborate the story of Williams as to the taking of the cattle and no one saw him with appellant in Fort Worth while they had the cattle or at any other time or place. This we think is insufficient as evidence to corroborate and support the evidence of the witness Williams. Branch's Ann. P. C. Sec. 719, and authorities there cited.

From the many cases dealing with the subject it is rather difficult to find one that could be said to be exactly in point. Each case has its characteristics and a conclusion must always be reached upon the facts of each particular case.

*Buchanan v. State, 8 S. W. 665,* in an opinion by Presiding Judge White lays down thus early a rule, which the court has consistently followed, in language that may well be noted under the facts of this particular case. It was also a case of cattle theft in which there were unfriendly circumstances tending to corroborate the accomplice witness and pointing the finger of suspicion at Buchanan. There it was said that the evidence "is too meager and unsatisfactory, in the absence of proof of other circumstances, which might, if they existed, have been made, and which would have been more cogent, at least, if not conclusive, of his guilt or innocence." Because the evidence was too "inconclusive and insufficient" the judgment was reversed. This opinion was followed and discussed by Presiding Judge Morrow in Nunnally v. State, 234 S. W. 391, where it was said that the corroboration is sufficient if it is to a material matter and tends directly and immediately to connect the accused with the commission of the offense. Relying upon Buchanan v. State, supra, Judge Morrow said, "Inconclusive or immaterial matter or matter which does not tend directly and immediately to connect or corroborate testimony which does not fill this measure is not sufficient."

*Clark v. State, 99 S. W. (2d) 927,* following this same line of cases, says that "the facts to be corroborated must be criminative of defendant on trial and the corroborative evidence must tend to connect defendant directly and immediately with the commission of the offense charged."

In the case before us nobody saw appellant and the witness together on their way to or within the pasture where the cattle were taken. No one saw them together in Fort Worth or returning therefrom. The finding of the flashlight seems to have been relied upon as a circumstance to show appellant's presence at the place where the cattle were stolen, but is really insufficient to serve that purpose because, under the evidence, it might have been either one of the twelve flashlights which witness had sold, or it may not have been either of them. The incident creates only a suspicion insufficient to be given the weight and effect of corroborative testimony. That the appellant sold three head of cattle on the day and date at the place named by the witness is an admitted fact. This, likewise, is a suspicious circumstance, but in the absence of some identification of the cattle or some conclusive circumstance it cannot be said under the holdings above referred to that this would be sufficient. Under the admissions of appellant on cross examination he had served a term in the Federal penitentiary, but this fact could not be considered either as corroborative of the evidence of the witness Williams nor as a circumstance pointing to his guilt in this case. It is valuable solely for the purpose of considering his credibility as a witness and for no other purpose. The case turns, not upon the strength of appellant's defense, but upon the weakness of the State's evidence.

The witness Williams stands in but little, if any, better light than did the appellant while on trial. Aside from his testimony, all the evidence could do no more than point the finger of suspicion toward appellant. This is not sufficient. It must do more.

We find nothing to meet the requirements and are constrained to hold that the evidence is insufficient.

The judgment of the trial court is reversed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a motion for a rehearing in this cause, citing instances wherein it is claimed that the testimony of Melvin Williams, the confessed accomplice, is corroborated to such an extent that it tends to connect appellant with the com-

mission of this offense. About the only corroborating circumstance, if such it can be called, we think, is the finding of a flashlight at or near the place where the accomplice said he thought one was lost. The witness Williams testified relative to the flashlight:

"I don't know exactly whether the defendant Shucks McCarty lost a flash light over there where we loaded these cattle that night. I knew about one getting lost over there in that corner where we loaded these cattle. I talked to Coyt Tuggle."

We are not impressed with the argument that the finding of such flashlight, not positively identified as belonging to appellant, was sufficiently strong enough to say that it evidenced the presence of appellant at the scene of the theft and tended to connect appellant with this theft outside of the evidence of the accomplice.

We are doubtful concerning the identification of the cattle sold at Fort Worth as being the same cattle lost by Mr. Yarbrough. They were merely described as three white faced cattle weighing approximately four hundred pounds each. The owner testified that he lost four heifers and nine calves, all white faced cattle, all unbranded, weighing about four or five hundred pounds; that they all had the pink eye, and he was treating them for such. The man who inspected these cattle that appellant received a check for, testified that there were three white faced cattle; he had no note of their weight; he did not think they had the pink eye, and he noted no marks nor brands thereon. The man who bought these cattle at Fort Worth testified that he bought one calf and two heifers; that the calf weighed 410 pounds, and the heifers together weighed 958 pounds. He never saw the cattle, but the sale slip did not evidence any docking for the pink eye or other damage.

We do not think this meager identification is sufficient to show that the cattle lost by Mr. Yarbrough were the same cattle sold at Fort Worth for which appellant received the money. In the event of another trial the testimony as to the identity of the three head of cattle sold at Fort Worth should be strengthened if possible.

We think this cause was properly decided in our original opinion, and the State's motion will therefore be overruled.