**Joe Pat ANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44603.**

Court of Criminal Appeals of Texas.

Nov. 21, 1973.

John R. McFall, Lubbock (Court appointed), for appellant.

Jack Young, Dist. Atty., Muleshoe, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for burglary.[1] Punishment, enhanced under Article 62, Vernon's Ann.P.C., twelve years.

---

1. When this case was originally before this court the judgment was reversed and the cause remanded in Anders v. State, Tex.Cr. App., 445 S.W.2d 167. Upon appeal from retrial of this case, Anders v. State, Tex.Cr. App., 471 S.W.2d 584, the appeal was abated in order that the trial court could determine if appellant had knowledge that his counsel had been permitted to withdraw, if appellant

were indigent, and if failure to file transcript of the testimony and briefs was within the knowledge and consent of appellant. A hearing was had in the trial court on January 26, 1973, in which it was determined that appellant was indigent, counsel for appeal was appointed and the court reporter was directed to prepare a transcription of his notes.

At the outset, appellant contends that the evidence will not sustain the conviction because it is based upon the testimony of an accomplice witness which is not sufficiently corroborated as required by Article 38.-14, Vernon's Ann.C.C.P.[2]

The test for determining the evidence required to support a conviction in addition to the testimony of an accomplice has been stated by this court in numerous opinions as follows:

"The test of the sufficiency of such corroboration is to eliminate the evidence of the accomplice from consideration and then to examine the evidence of other witnesses to determine if there is inculpatory evidence, evidence of an incriminating nature which tends to connect the accused with the commission of the offense. Merely showing an offense occurred is not sufficient." Odom v. State, Tex.Cr.App., 438 S.W.2d 912; Edwards v. State, Tex.Cr.App., 427 S.W.2d 629.

"The corroborative testimony need not supply direct evidence; it must only tend to connect appellant with the crime." Cherb v. State, Tex.Cr.App., 472 S.W.2d 273.

"It is the combined cumulative weight of the evidence furnished by non-accomplice witnesses which supplies the test." Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422. O'Donald v. State, [Tex.Cr.App.] 492 S.W.2d 584; Colunga v. State, [Tex.Cr.App.] 481 S.W.2d 866. See also Tompkins v. State, [501] S.W. 2d [132] (No 47,095, November 14, 1973); Reynolds v. State, [Tex.Cr.App.] 489 S.W.2d 866; Windham v. State, [Tex.Cr.App.] 479 S.W.2d 319; Odom v. State, [Tex.Cr.App.] 438 S.W.2d 912; Edwards v. State, 427 S.W.2d 629.

The record reflects that on January 11, 1967, the Tide Products, Inc. storage room at Clays Corner in Parmer County was burglarized and almost forty-nine cases of Treflan, a herbicide, bearing Lot No. L–2113 were missing.

■ There were no witnesses to the burglary and no evidence to show that appellant was ever at or in the vicinity of the burglarized storage room at any time. Being a circumstantial evidence case, the State must rely upon the rule that unexplained possession of recently stolen property is sufficient to sustain a conviction for the burglary of the storage room from which the property was taken.

The jury was instructed that the witness Brock was an accomplice witness. See Ysasaga v. State, Tex.Cr.App., 444 S.W.2d 305. Brock testified that around the 16th or 17th of January, 1967, he received a telephone call in which inquiry was made if he wanted to buy any Treflan and arrangements were made for the caller to come to Brock's home. A man identified as appellant came to Brock's house and, pursuant to an agreement made at this meeting, Brock purchased ten cases of Treflan at seventy dollars per case from appellant. The record reflects that Treflan retailed at $102.00 per case in the area. Brock stated that when the Treflan was delivered to him he told appellant he "would take some more." About five o'clock in the morning on January 28, 1967, appellant came to Brock's house and told Brock, "I have got you some more Treflan." Without agreeing to price, Brock took forty cases. Brock recalled that appellant was driving "a red and white Chevrolet pickup, '65 or '66 model" and that "a Spanish guy" was with him. After unloading the Treflan, it was agreed that Brock would pay appellant thirty-five dollars per case by Monday, January 30th. Brock sold thirty-eight (of the lot of forty cases) to various purchasers for sixty-five dollars per case, one case was sold for

2. Article 38.14, V.A.C.C.P., provides:
"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

$62.50 and Brock kept one case. After collecting from these sales Brock met appellant in Anton on January 30th and paid appellant for the forty cases. In accordance with Brock's request on this occasion, appellant delivered thirteen more cases of Treflan to Brock on the night of January 30th. The delivery was made in a pickup Brock recognized as having been a vehicle used for drag racing and previously having belonged to one Don Kidd. Brock again paid appellant thirty-five dollars per case. When Brock was asked if he knew the Treflan was stolen he stated that there was no question but what it was stolen, after he purchased it for thirty-five dollars per case.

We look now to evidence other than that of the accomplice witness to determine if it tends to connect the appellant with the offense alleged.

The original ten cases purchased for seventy dollars per case were sold by Brock to one Neil Wood for seventy dollars per case. The cans and boxes of Treflan unused by Wood on March 17, 1967, bore the lot number L–2113. Bob Martin, plant superintendent for Tide Products, Inc. at the time in question, identified one of the cases recovered from Wood by a notation "Sold C C" he had placed thereon with a grease pencil. Martin further testified that he had no idea about how many cases were stamped with the lot number L–2113 by the factory.

In addition to Wood, numerous other farmers testified regarding purchasing Treflan from Brock at prices ranging from sixty to sixty-five dollars per case. One of the purchasers, James Blessing, testified he was at Brock's house when a delivery of Treflan was made to Brock and that the vehicle which made the delivery was, in his opinion, a Chevrolet with a "louder than stock" muffler. Don Kidd, a mechanic, testified that appellant owned two Chevrolets, that he did a lot of work on them about the time in question and that one of the vehicles would run about twenty miles an hour faster than the usual car of this make and model. Kidd further testified that he had seen appellant "in the presence of a Spanish man."

Bill Buckman testified that a friend by the name of Roy Allen Faulkner told him that he had an opportunity through a hired hand to buy some Treflan cheaper than Buckman could buy some for the store he operated. Being aware of reports of theft of Treflan, Buckman and Faulkner, believing that there would be a reward for catching the thief, decided to buy the cheaper Treflan. Faulkner's hired hand Manuel Velasquez, sometimes known as Joe Velasquez,[3] arranged for the purchase. The purchase took place on the night of January 12, 1967, some seven or eight miles out of Levelland. Velasquez took the money for the purchase to two men in a red and white Chevrolet pickup.[4] Neither Buckman nor Faulkner talked to the two men in the pickup, but Buckman was able to tell that one of the two men spoke Spanish. Buckman stated that the men in the pickup would not let them get a good look at them. It was determined that the lot number of the Treflan was L–2113 and

3. Texas Ranger James R. Singleton testified that he had tried to locate Velasquez and had found that a Joe Velasquez or Manuel Velasquez was deported in February, 1967. According to Singleton, the records reflect that the person deported matched the description of the man working for Faulkner. Upon original submission of this case, Anders v. State, Tex.Cr.App., 445 S.W.2d 167, the court noted that the person who negotiated the purchase for Buckman and Faulkner did not testify and his absence was not explained or accounted for. This court said, "In such situation, circumstantial evidence that is not strong is held to be insufficient to sustain a conviction."

4. Buckman testified in the instant case that he obtained the license number of the pickup. In the companion case of Ysasaga v. State, Tex.Cr.App., 444 S.W.2d 305, it is noted that while Buckman and Faulkner were unable to identify the two men in the pickup they obtained the license number of the vehicle and it was shown to have been registered in Eastland County to Ysasaga.

the Roland-Gordon Company of Abernathy, a supplier of Treflan for the area, was advised. After several weeks passed and Buckman did not hear from anyone, the Treflan was used.

While many of the details related by the accomplice are supported by the testimony of the witnesses, the corroborating evidence fails to meet the statutory requirement that it tend to connect the appellant with the offense alleged. See O'Donald v. State, supra.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, J., not participating.