Andrew Lee **MITCHELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 68915.

Court of Criminal Appeals of Texas, En Banc.

April 27, 1983.

Rehearing Denied June 15, 1983.

Curtis L. Owen, Tyler, for appellant.

Hunter B. Brush, Dist. Atty. and Ruth J. Blake, Asst. Dist. Atty. Tyler, Robert Huttash, State's Atty. and Alfred Walker, Asst., State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for capital murder. V.T.C.A., Penal Code, § 19.03. After the jury affirmatively answered the special issues submitted pursuant to Article 37.071(b)(1) and (b)(2), V.A.C. C.P., the court assessed punishment at death. V.T.C.A., Penal Code, § 12.31.

At the outset the appellant contends that the evidence is insufficient to corroborate the two accomplice witnesses, his son, Anthony DeWayne Mitchell, and Edward Earl Owens, as required by Article 38.14, V.A.C. C.P., and thus the conviction cannot stand.

Omitting the formal parts, the indictment alleged that on or about December 26, 1979, in Smith County, the appellant "did then and there intentionally and knowingly cause the death of Keith Wills by shooting him with a pistol; and the said Andrew Lee Mitchell did then and there intentionally cause the death of the said Keith Wills in the course of committing the felony offense of robbery upon the said Keith Wills . . . ."

The record shows that Keith Wills, a young man,[1] was operating a fireworks stand outside of Troup on December 26, 1979. The money raised was to be used for a orphanage in India. He relieved Alva

---

1. Wills' age does not appear to be reflected by the record. He is only described as a young man.

Cunningham, a minister at the Faith Temple Church, at the stand about 5 p.m. Wills was left with $150.00 and some change in a cigar box to conduct business. He apparently planned to operate the stand all night. He was placed at the stand about 8 p.m. by other than the accomplice witnesses.

About 8 a.m., December 27, 1979, 15-year-old Steven Oaks went to the fireworks stand. He saw a man lying on the floor of the stand who had been shot. A television set was on. Oaks returned home and told his father, who said it was a prank. Later, when he saw a crowd around the stand, he stopped and talked to the deputy sheriff.

Potsy Sanders and her son went to the fireworks stand about 9 a.m. on December 27, 1979, and found a man dead on the floor. He had been shot. They reported it to the police.

The body was identified as that of Keith Wills. Dr. V.V. Gonzales performed an autopsy at 2:30 p.m. on December 27, 1979. He found a wound behind the ear in the upper part of the neck. Tracing the course of the bullet, he stated he found a .32 caliber bullet inside the brain. Another wound was above the nose and between the eyes. There was a penetrating wound into the cranial cavity. A fragmented bullet was removed. The doctor could not identify the caliber of this fragment. There were powder burns around both wounds indicating shots at close range. The cause of death was pistol gunshot wounds to the brain, either of which would have been fatal.

Twenty-four-year-old Edward Earl Owens lived at appellant's house in Tyler with appellant, his wife, and appellant's 18-year-old son, Anthony DeWayne Mitchell. Owens and the son testified for the State. Owens had been granted immunity and the younger Mitchell had been promised 10 years' punishment, probated. From their testimony, it was clear that they were accomplice witnesses as a matter of law.

With the exception of a few minor details, their testimony was generally the same. These accomplice witnesses revealed that in the company of the appellant they left appellant's Tyler residence in the early evening hours of December 26, 1979. Appellant was driving his wife's red Firebird automobile. They had with them "a Five Shot Charter arm pistol, a 38 Special," a .30–30 Winchester rifle, and a .12 gauge riot shotgun.

First they went to Kenneth Crawford's mobile home near Arp. While there appellant asked Crawford if he knew someone appellant could rob as he (appellant) "had to have some money."[2] When the three left Crawford, they drove to a supermarket in Arp. They abandoned robbery plans there because of the number of people in the store. They did follow two people leaving the store in a car, but abandoned that when it became apparent they were being observed from the other car.

Appellant, his son and Owens then drove to Troup and proceeded to a store there. They abandoned robbery plans there when it appeared possible someone was in the back watching events in the store.

The three drove to the Kity Korner store in Troup. Appellant and Owens entered the store. The store's operator and appellant engaged in conversation about trading firearms. No trade took place. The three then drove to the fireworks stand near Troup where the deceased worked. Appellant purchased some fireworks and asked how late the stand would be open in case he had to return any of the fireworks. He was told the stand would be open all night.

According to Owens they then drove to Whitehouse where they encountered Carl Prentiss, who led them to Sam Martin's house. Owens wanted to see if Martin was still interested in his car, which he wanted to sell. According to Owens, after talking to Martin, they returned to the fireworks

---

**2.** Owens related the discussion was between appellant and Crawford. The son testified all four discussed robbing an elderly couple with a coin collection, but decided against it because their son was home from college for the holidays.

stand near Troup.[3] The express purpose of all three men was to rob the stand's operator. The accomplice witnesses related appellant stated the operator had to be killed to keep him from identifying them.

Appellant and his son approached the stand and asked the operator for bottle rockets. Owens stayed near the car, apparently as a lookout. Appellant was armed with the .38 cal. pistol covered by a towel or cloth. As the operator, later identified as Wills, turned to get the requested fireworks, appellant shot the operator in the neck at close range and jumped over the counter. His son followed. The pistol misfired, which was a common problem with the weapon. Appellant finally shot the deceased a second time. They took a cigar box with bills and change, the deceased's wallet and car keys. When Owens asked if the "guy" was dead, the appellant replied that he should be as he had been shot between the eyes. They then drove along the Mixon Road. Appellant took the $100.00 that was in the cigar box and the change was placed in the car's console. They stopped and Owens buried the two .38 cal. bullet hulls and appellant's son disposed of the cigar box and keys, etc. They discussed committing a robbery at a Bullard fireworks stand, but upon arrival they found the stand closed. They returned to appellant's house in Tyler where appellant washed his clothes to remove blood and the two accomplice witnesses cleaned the interior of the car.

Owens and appellant's son went to the Savoy Club in Tyler and later went to the room appellant had at the nearby Alfreda Motel. Appellant had purchased heroin with some of the money taken in the robbery. He, Owens, and several others were "shooting" the heroin. It appears appellant also bought a gun for $40.00 for his son from a Don Walker, who was at the motel room.

Jack Harless testified he was operating the Kity Korner store in Troup on December 26, 1979. Between 7:30 or 8:30 p.m. two men entered the store, one large and one a smaller man. His description fit the appellant and Owens. The big man discussed a trade of firearms with Harless and showed him a .30–.30 cal. Winchester rifle. No trade was consummated. The big man asked if Harless could repair a pistol which often misfired, and Harless requested to see the weapon. The big man left to get the pistol, but returned to say he had forgotten he had left it at home. As the two men were leaving the store, David Sutton entered and spoke to the larger man.

Sutton identified appellant as being in the Kity Korner store on the evening of December 26. On cross-examination he admitted he could not recall the exact date he had seen appellant in Troup, but it was during the holiday season.

Jeff Hammonds, 13 years old, testified he and his older brother, James, had gone to Troup about 7:45 p.m. on December 26, 1979. Jeff noticed a red Firebird because it was loud and because of his interest in sports cars. On the way home the brothers stopped at the fireworks stand outside of Troup and saw the red Firebird there with three people in it.

Jeff described the men and identified a photograph of the appellant and a photograph of his son as two of the men he saw at the fireworks stand.

James identified a photograph of appellant's son and generally corroborated his brother's testimony. The Hammonds brothers established that Wills was alive around 8 p.m. on the night in question.

Carl Prentiss testified that he saw Owens in Whitehouse on December 26, 1979 with two other men, whom he could not identify. He led them to Sam Martin's residence at Owens' request.

---

**3.** Appellant's son testified that they went to Whitehouse prior to going to the fireworks stand the first time and also differed with Owens' testimony as to how many times they visited the fireworks stand before the killing.

Sam Martin testified that on that day Owens came to see him between 7:30 to 8:30 p.m. and discussed selling a car. He observed Owens was in a red car, but he could not identify appellant as being in the car.

Hiawatha Lyles, Jr., testified around Christmas time 1979 he was in a room at the Alfreda Motel with the appellant, the two accomplice witnesses and other persons. He revealed heroin was available in the room and that appellant's son looked at a gun being sold by Don Walker.

Ray High testified that on January 8, 1979, he happened to be at appellant's house in Tyler and observed on a night stand in appellant's bedroom a blue steel gun which he believed to be "a .38." About January 8, 1979, appellant and Owens went with him to Jacksonville. Upon their return trip to Tyler he stopped the truck to relieve himself, and while doing so, he heard and saw appellant fire a shot from a gun and heard Owens and appellant discussing the fact the hull of the bullet had stuck in the gun's chamber.

Walter Woodhull, Smith County deputy sheriff, related he obtained a statement from Owens on January 10, 1980. Owens took him to two different locations to recover physical evidence. Two .38 cal. cartridge hulls, the cigar box and personal items belonging to the deceased were recovered.

Woodhull had attended the autopsy on the deceased performed by Dr. Gonzales and testified he received from the doctor "a copper jacket, number .38 caliber slug and the lead slug from the .38 caliber and lead fragments," which were recovered from the deceased's body. The chain of custody of such items was traced to Allan Jones, a firearm expert at Dallas County Forensic Laboratories.

Jones testified the items taken from the deceased's body had been fired by a .38 caliber gun, either a Ruger or an R G or a

Charter Arm weapon. The particular type of ammunition was not available "in a .32 caliber," but it would be easy for someone to mistake the type as that of a lower caliber than a .38 caliber.[4] Jones was unable to make a positive association of any of the fragments removed from the deceased and the two .38 cal. cartridge hulls found along the Mixon Road at Owens' direction.

Turning now to appellant's contention, we observe that Article 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

In *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968), this court wrote:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then the examine the evidence of other witnesses with the view to ascertain *if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense.* If there is such evidence, the corroboration is sufficient; otherwise, it is not. *Dalrymple v. State,* Tex.Cr.App., 366 S.W.2d 576; *Bradford v. State,* 170 Tex.Cr.R. 530, 342 S.W.2d 319." (Emphasis supplied.)

See also *Odom v. State*, 438 S.W.2d 912 (Tex.Cr.App.1969); *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972); *James v. State*, 538 S.W.2d 414 (Tex.Cr.App.1976); *Etheredge v. State*, 542 S.W.2d 148 (Tex.Cr.App.1976); *Nelson v. State*, 542 S.W.2d 175 (Tex.Cr.App.1976); *Loa v. State*, 545 S.W.2d 837 (Tex.Cr.App.1977); *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App. 1977).

---

4. See Dr. Gonzales' testimony earlier noted.

■ In applying the test of the sufficiency of the corroboration, each case must be considered on its own facts and circumstances—on its own merit. *Etheredge v. State,* supra; *O'Donald v. State,* 492 S.W.2d 584 (Tex.Cr.App.1973); *Barnett v. State,* 163 Tex.Cr.R. 270, 290 S.W.2d 234 (Tex.Cr. App.1956); *McCarty v. State,* 144 Tex.Cr.R. 408, 163 S.W.2d 200, 202 (Tex.Cr.App.1942). See also 23 C.J.S. Crim.Law, § 812(6), p. 134; *Forbes v. State,* 513 S.W.2d 72 (Tex. Cr.App.1974), cert. den. 420 U.S. 910, 95 S.Ct. 830, 42 L.Ed.2d 840.

■ All the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary. *Washburn v. State,* 167 Tex.Cr.R. 125, 318 S.W.2d 627, 634 (Tex.Cr.App.1958), cert. den. 359 U.S. 965, 79 S.Ct. 879, 3 L.Ed.2d 834; *Brown v. State,* 561 S.W.2d 484 (Tex.Cr.App.1978). The corroborative evidence may be circumstantial or direct. 23 C.J.S., Crim.Law, § 8.2(3), f. 107 (note 51 with a host of Texas cases cited); *Brown v. State,* supra. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Perkins v. State,* 450 S.W.2d 855 (Tex.Cr.App.1970); *Windham v. State,* 479 S.W.2d 319 (Tex.Cr.App. 1972); *Colunga v. State,* 481 S.W.2d 866 (Tex.Cr.App.1972). It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *Attwood v. State,* 509 S.W.2d 342 (Tex.Cr.App.1974); *Reynolds v. State,* 489 S.W.2d 866 (Tex.Cr.App.1972); *Rainey v. State,* 401 S.W.2d 606 (Tex.Cr. App.1966); *Washburn v. State,* supra. Apparently insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of the accomplice witness' testimony. *Holmes v. State,* 70 Tex.Cr.R. 423, 157 S.W. 487 (Tex.Cr.App. 1913).

In *Reynolds v. State,* supra, it was said: "The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish his guilt. Otherwise, the testimony of the accomplice would be valueless. The corroborative evidence is sufficient if it tends to connect the accused with the crime, and it is the cumulative weight of such evidence which supplies the test." See also *Minor v. State* [108 Tex.Cr.R. 1] 299 S.W. 422 (Tex.Cr.App.1927).

In the instant case the accomplice witnesses made out a complete case against the appellant. Without the requirements of Article 38.14, supra, there could be no question as to the sufficiency of the evidence to sustain the jury's verdict. Applying Article 38.14, supra, as we are required to do, and the test of sufficiency of the corroboration as discussed in *Edwards v. State,* supra, we must look to the non-accomplice witnesses' testimony.

■ Article 38.14, supra, expressly provides that evidence merely showing the commission of an offense is not sufficient alone to corroborate an accomplice witness. *Nelson v. State,* 542 S.W.2d 175 (Tex.Cr. App.1976); *Anders v. State,* 501 S.W.2d 665 (Tex.Cr.App.1973); *Reynolds v. State,* supra; *Colunga v. State,* supra; 24 Tex. Jur.2d, Evidence, § 694, p. 326. However, it is a factor to be considered along with other possible factors in determining whether there is sufficient independent evidence to corroborate the accomplice witness. The independent evidence in this case shows that the deceased, who operated a fireworks stand, was twice shot in the head while at the stand at night and money in a cigar box and personal items were taken. Such evidence shows a murder by someone apparently in the course of a robbery.

It has been held that it may be shown in corroboration that the accomplice witness and the accused were intimate associates. *Brunett v. State,* 114 Tex.Cr.R. 244, 26 S.W.2d 208 (Tex.Cr.App.1930). In 23 C.J.S., Crim.Law, § 812(4)(g), pp. 119–120, it was written, however, that "... it has been held not sufficient corroboration merely to

show *generally* the accused was an associate of the accomplice at a time antecedent to the commission of the crime, or that they were together shortly before or shortly after the commission of the crime." (Emphasis supplied.) See also *Cherb v. State,* supra; *Moore v. State,* 521 S.W.2d 263 (Tex. Cr.App.1975); *Lyman v. State,* 540 S.W.2d 711 (Tex.Cr.App.1976). See also *Ayala v. State,* 511 S.W.2d 284 (Tex.Cr.App.1974). The presence of the accused with the accomplice witness, however, may when coupled with the other circumstances be sufficient to corroborate the testimony of the accomplice witness. *Nelson v. State,* 542 S.W.2d 175 (Tex.Cr.App.1976); *Dillard v. State,* 550 S.W.2d 45 (Tex.Cr.App.1977); *Moore v. State,* supra; *Cherb v. State,* supra.

▮ Evidence which *merely* goes to show motive or opportunity of the accused to commit the crime is insufficient to corroborate the accomplice witness, although it may be considered in connection with other evidence tending to connect the accused with the crime. *Reynolds v. State,* supra; 23 C.J.S., Crim.Law, § 812(4), p. 111; *Rogers v. State,* 461 S.W.2d 399 (Tex.Cr.App. 1970).

▮ The two young accomplice witnesses testified they lived with the older appellant. The independent evidence showed they were close associates with the appellant before and after the alleged offense. The independent evidence showed the accomplice witnesses were together with the appellant shortly before and shortly after the alleged offense. The testimony of Harless and Sutton placed appellant at a store in Troup on the very evening in question. Harless said appellant showed him a 30–30 cal. Winchester rifle which the accomplice witnesses said they had taken with them on December 26th. Appellant also asked Harless about repairing a misfiring pistol, but later claimed he left it at home. The accomplice witnesses revealed that the .38 cal. pistol they had that night had a habit of misfiring.

Jeff Hammonds identified appellant and his son as two of the three men he saw in a red Firebird and at the fireworks stand outside of Troup at 8 p.m. on December 26th. He heard the appellant asking the man operating the stand how long the business would be open that night. James Hammonds testified to essentially the same facts. This corroborated the testimony of the accomplice witnesses as to what occurred on their first trip to the stand.

The accomplice witnesses stated appellant shot the deceased with the Charter Arm .38 cal. pistol. The son related the pistol misfired before and after the second shot. The bullet slug and fragments taken from the deceased's body were shown by independent evidence to have been .38 cal. ammunition that could have been fired by a .38 cal. Charter Arm weapon. Ray High saw a .38 cal. weapon on a night stand in appellant's bedroom in early January, 1980, and later on a trip saw appellant shoot a gun and complain about the shell hull sticking in the gun chamber.

Owens could not see what happened after appellant first shot the deceased in the neck and jumped over the counter. He later heard a second shot. Upon leaving the scene, Owens asked if the man was dead, and appellant informed him he had shot the man between the eyes. Dr. Gonzales testified one of the two wounds was between the eyes.

Without detailing further facts, we observe that the court charged the jury on the law of accomplice witnesses and that Owens and appellant's son were accomplice witnesses as a matter of law. Viewing the evidence in the light most favorable to the jury's verdict and the rules discussed above, we conclude that the evidence independent of the accomplice witnesses tends to connect the appellant with the crime charged and is sufficient to corroborate the accomplice witnesses' testimony.

Appellant also urges the court erred in failing to sufficiently charge on the corroboration of the accomplice witness' testimony.

The court charged on the law of accomplice witnesses. See Article 38.14, V.A.C.C.P. The charge is in many respects similar to the charge found sufficient in *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977), and it further instructed that the accomplice witnesses could not corroborate each other.

■ Appellant's requested charge (Article 36.15, V.A.C.C.P.) in its first paragraph was similar to the language of Article 38.14, supra, and to the charge actually given. The second paragraph requested an instruction that mere presence of a defendant in company of the accomplice witnesses was not in itself sufficient corroboration of the testimony of the accomplice witnesses. The requested charge was denied by the court, although the charge on accomplice witness testimony did not include a "mere presence" charge. The rule is that mere presence of the accused in the company of an accomplice witness shortly before or after the time of the offense is not, in itself, sufficient corroboration of the accomplice witness' testimony. *Moore v. State*, 521 S.W.2d 263 (Tex.Cr.App.1975). However, presence of the accused with an accomplice witness when coupled with other circumstances, may be sufficient corroboration. *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App. 1971). If the testimony raised the defensive theory of mere presence, appellant was entitled to his requested charge. *McShane v. State*, 530 S.W.2d 307 (Tex.Cr.App.1975); *Dillard v. State*, supra.

The State argues that the court charged the jury under the law of parties that mere presence alone will not make a person a party to an offense, and that the charge should be read as a whole, and when it is, appellant's rights were adequately protected and there is no reversible error. *Gonzales v. State*, 466 S.W.2d 772 (Tex.Cr.App. 1971), and *Dabbs v. State*, 507 S.W.2d 567 (Tex.Cr.App.1974), are cited.

■ Be that as it may, the appellant did not testify and the evidence did not raise the defensive theory of mere presence. No reversible error is presented. *Dillard v. State*, supra, at p. 51; *Bilbrey v. State*, 594 S.W.2d 754, 756 (Tex.Cr.App.1980). Appellant's contention is overruled.

■ Appellant contends the court reversibly erred in denying his counsel the right of effective cross-examination of Edward Owens.

The State's motions in limine to prevent appellant from inquiring into Edward Owens' prior criminal record and arrests were heard by the court, which ruled that no act of misconduct would be mentioned until the admissibility of such misconduct could be determined in the jury's absence. Nevertheless, on cross-examination appellant inquired if Owens had been in jail "some 34 times." The jury was instructed to disregard the question. A bill of exception was perfected. It showed that Owens had been arrested approximately 34 times but no evidence he had ever been convicted of any offense.

There was nothing to show that appellant was entitled to impeach Owens under the provisions of Article 38.29, V.A.C.C.P. Appellant cites *Simmons v. State*, 548 S.W.2d 386 (Tex.Cr.App.1977), and urges great latitude should have been allowed him to show ill will, bias, motive and animosity by any witness against him. It was shown that Owens had been granted immunity with regard to the instant offense, and there was nothing to show that any of the arrests were related to the appellant or the instant offense in any way as to show the possibility of ill will, bias, motive and animosity, etc. The contention is overruled.

Appellant advances the contention the court erred in excluding from evidence a map of the city of Troup offered as a defensive exhibit.

■ Leroyce Jones, called by the defense, stated he had been an investigator for 20 years. He identified defense Exhibit No. 4 as a city map of Troup. On voir dire examination he testified he did not draw

the map and did not know who did, that it was a copy, not an original, did not know whether it was drawn to scale. He did not live in Troup. The court sustained the objection to the introduction of the map. Appellant offered it as part of a bill of exception. He does not point out what information he was deprived of presenting to the jury. He does not show how it would have aided or clarified Jones' testimony or how it was relevant. He cites no authority, but argues any inaccuracies went to the weight of the evidence rather than the map's admissibility. As a general rule maps, plats and diagrams must be properly authenticated and shown to be accurate before they can be admitted. *Popplewell v. City of Missouri,* 342 S.W.2d 52 (Tex.Civ.App.1960). We do not find the court abused its discretion. Appellant's contention is overruled. See 2 Ray, Texas Evidence, 3rd Ed., § 1465, pp. 144–145.[5]

■ In another ground of error appellant contends the court erred in receiving prejudicial opinion testimony. Appellant claims the State introduced evidence he was a "suspect" prior to his arrest on January 10, 1980.

Deputy sheriff Woody Woodhull testified as to his investigation of the alleged offense and the recovery of certain exhibits with the aid of Owens. He was asked whether prior to January 1, 1980 he had "any suspects." General objections as to any testimony as to "suspects" was overruled. The record then reflects the following direct examination:

"Q Did the names Tony Mitchell and Andrew Mitchell and Edward Owens come up regarding this case prior to January, 1980?

"A Yes, sir. They did."

5. In 2 Ray, Texas Evidence, 3rd Ed., § 1465, pp. 144–145, it is written:

"The normal practice is for the map or model to be identified by a witness verified by him as being a correct representation of the thing in question and then introduced in evidence as a part of the testimony of the witness. Of course the visual aid used must

Appellant argues this testimony was equivalent to an expression of Woodhull's opinion of his guilt, and expression of opinion of a defendant's guilt constitutes reversible error. We cannot agree. Further, there was no objection on the grounds now urged, and because of the variance complaint on appeal need not be considered. *Seals v. State,* 634 S.W.2d 899, 909 (Tex.Cr. App.1982); *Bouchillon v. State,* 540 S.W.2d 319 (Tex.Cr.App.1976). Still further, the general objections urged at trial were not sufficient to perserve error, if any.

Appellant's ground of error is overruled.

■ Appellant in a pro se supplemental brief contends the evidence is insufficient to sustain the allegation in the indictment that he killed the deceased "by shooting him with a pistol."

Owens and appellant's son testified when they left home with appellant on the night in question they had with them a .38 cal. pistol, and that appellant later shot the deceased with the pistol. This testimony, when coupled with that of Dr. Gonzales and the firearm expert Jones, clearly shows that appellant's contention is without merit.

■ Appellant argues the court erred in admitting evidence of extraneous offenses.

The appellant lists four extraneous offenses admitted during Owens' testimony and three extraneous offenses admitted during the testimony of appellant's son.

This ground of error is multifarious and does not comply with Article 40.09, § 9, V.A.C.C.P. Nothing is presented for review. *Sierra v. State,* 476 S.W.2d 285 (Tex. Cr.App.1971); *Beam v. State,* 500 S.W.2d 802 (Tex.Cr.App.1973); *Elizalde v. State,* 507 S.W.2d 749 (Tex.Cr.App.1974).

be relevant to some issue. Beyond that, however, the admissibility of particular aids is wisely left to the discretion of the trial judge." Cf. *Roderiquez v. State,* 32 Tex.Cr.R. 259, 22 S.W. 978 (1893); *Bullock v. State* [73 Tex.Cr.R. 419] 165 S.W. 196 (Tex.Cr.App. 1914).

We observe that appellant contends Owens was permitted to testify that appellant and Kenneth Crawford talked about robbing someone who had a coin collection, and that he and appellant talked of robbing and killing at a fireworks stand in Bullard. He also contends appellant's son, Anthony Mitchell, was permitted to relate that Owens and appellant talked about the possible coin collection robbery, and that appellant and Owens discussed committing a robbery at the Kity Korner store in Troup. This testimony related not to offenses committed but only discussions of possible robberies which occurred after appellant, his son and Owens left home on December 26, 1979 and occurred prior to and after the alleged offense and before their return to Tyler.

Appellant also complains that Owens and the younger Mitchell were permitted to testify that soon after their return to Tyler he used the fruits of the crime to purchase heroin and was shooting heroin in a motel room.

■ It is well settled that where one offense or transaction is one continuous episode or another offense or transaction is a part of the case on trial or blended or closely interwoven therewith, proof of all the facts is proper. *Taylor v. State*, 420 S.W.2d 601, 605 (Tex.Cr.App.1967); *Tinsley v. State*, 461 S.W.2d 605 (Tex.Cr.App.1970); *Jones v. State*, 505 S.W.2d 909 (Tex.Cr.App. 1974); *Johnson v. State*, 510 S.W.2d 944, 948 (Tex.Cr.App.1974); *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977); *Archer v. State*, 607 S.W.2d 539, 542 (Tex.Cr.App. 1980).

In *Archer*, supra, this court wrote:

"Such an extraneous offense is admissible to show the context in which the criminal act occurred; this has been termed the 'res gestae,' under the reasoning that events do not occur in a vacuum and that the jury has right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. *Albrecht v. State*, 486 S.W.2d 97, Tex.Cr.App. [1972]"

■ Appellant also contends the court erred in permitting Owens to testify that the pistol with which the appellant shot the deceased had been acquired by him (Owens) from Kenneth Crawford, who had obtained the weapon in a burglary. The evidence revealed an extraneous offense committed by a third party which was not shown to have involved the appellant.

Appellant's contentions are overruled.

■ Appellant further urges that the trial court's charge on extraneous offenses was insufficient. The court gave a limiting charge as to extraneous offenses. Appellant now for the first time contends the court should have additionally charged that the testimony of the accomplice witnesses concerning such extraneous offenses had to be corroborated by independent evidence. No objection nor requested charge having been presented, no reversible error is presented.

Appellant makes claim that the evidence is insufficient to support the affirmative finding at the penalty stage of the trial as to Special Issue No. 2 as to the probability of future criminal acts of violence.

In addition to the evidence at the guilt stage of the capital murder case, the State offered evidence of appellant's 1971 conviction in federal court for conspiracy to possess a destructive device called a Molotov cocktail, and introduced the testimony of law enforcement officers that appellant's reputation for being a peaceable and law-abiding citizen was bad. Appellant's son was recalled. He testified his father had not had a job in the last four or five years, and that about April, 1979 he and his father left Tyler for a number of months because of his father's fear of some sealed indictments. They travelled in Texas and Oklahoma, and he supported himself by stealing motorcycles and robbing dope dealers. The son related the appellant was involved in a robbery in Dallas in which drugs were tak-

en. On another occasion in Dallas he and his father stole a tractor-trailer rig. He admitted that during this time he would steal government checks out of mail boxes and cash them. He explained that his father would not allow him to participate in the robbery of dope dealers which he (appellant) committed. He told of being sent by his father to commit a robbery at a beauty salon in Athens, but he panicked and ran. As punishment his father made him commit another robbery. The son also stated he tried to get his father to quit his use of illegal drugs.

■ It is well established that the circumstances of the offense itself can sustain an affirmative answer to the second special issue under Article 37.071, supra, if they are severe enough. *King v. State*, 631 S.W.2d 486 (Tex.Cr.App.1982); *Brooks v. State*, 599 S.W.2d 312 (Tex.Cr.App.1979); *Muniz v. State*, 573 S.W.2d 792, 795 (Tex.Cr.App.1978). The jury, at the penalty stage of the trial, may consider all of the evidence adduced at the guilt stage of the trial. *Russell v. State*, 598 S.W.2d 238, 254 (Tex.Cr.App.1980); *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979); *Duffy v. State*, 567 S.W.2d 197 (Tex.Cr.App.1978); *Felder v. State*, 564 S.W.2d 776 (Tex.Cr.App.1978); *Brock v. State*, 556 S.W.2d 309 (Tex.Cr.App.1977); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976). Indeed the circumstances of the offense and the facts surrounding it may furnish greater probative evidence than any other evidence regarding the second special issue submitted at the penalty stage of a capital murder case. *Duffy v. State*, supra, and cases there cited; *Crawford v. State*, 617 S.W.2d 925, 933 (Tex.Cr.App.1980).

■ When the facts of the instant offense are considered with the additional evidence adduced as appellant's reputation, prior criminal record and activities, we conclude the evidence is clearly sufficient to support the jury's finding of "yes" as to the said second special issue.

Appellant acknowledges that this court has held that unadjudicated extraneous offenses are admissible without the necessity of a prior conviction at the penalty stage of a capital murder case because such evidence is relevant to punishment, and that these unadjudicated extraneous offenses can be proven by the uncorroborated testimony of an accomplice witness. *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981). Appellant asks that we re-evaluate our prior decisions including *May*. This we decline to do.

It is true that there was no psychiatric testimony, but it is not essential to support an affirmative finding to the second special issue in a capital murder case. *Brooks v. State*, supra; *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977).

Appellant's ground of error is overruled.

The judgment is affirmed.

CLINTON, TEAGUE and MILLER, JJ., concur in the result.

Before the court en banc.

OPINION DISSENTING TO DENIAL OF APPELLANT'S MOTION FOR LEAVE TO FILE A MOTION FOR REHEARING

CLINTON, Judge.

In *May v. State*, 618 S.W.2d 333 (Tex.Cr.App.1981), according to the opinion of the Court, a majority rejected the assertion that "the provisions of Art. 38.14, [V.A.C.C.P.] are applicable to the extraneous offenses offered in evidence at the punishment stage" of a capital murder case, *id.*, at 341. The Court concluded:

"We hold that evidence offered to prove the special issues of Art. 37.071, supra, is not included within the provisions of Art. 38.14, supra. *Therefore,* the 'yes' answers to the special issues of Art. 37.071, supra, are supportable on the relevant accomplice witnesses' testimony concerning the appellant's prior criminal conduct and the

court did not err in failing to submit an 'accomplice witness' charge at the punishment stage of the trial." *Id.,* at 343. [Emphasis added]

However, the conclusion reached by the *May* opinion does not rule out a constitutional attack on the use of such testimony to show "a reasonable probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," Article 37.071(b)(2), V.A.C.C.P.

"An accomplice witness is a discredited witness;"[1] practically from the beginning the courts of this State have so regarded such a witness.[2] So much so that "the settled law in this state [is that] when evidence of collateral crimes is introduced for one of the various purposes for which such evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof," *Lankford v. State,* 93 Tex.Cr.R. 442, 248 S.W. 389 (1923), quoted approvingly in *Wells v. State,* 118 Tex.Cr.R. 355, 42 S.W.2d 607, 608–609 (1931).

Now that we have the bifurcated trial procedure it would seem to follow that due course of law would also demand that testimony of an otherwise discredited witness purporting to report extraneous offenses on the part of the accused be similarly treated, examined and evaluated. In a capital case the question is at least important enough to look into.

Accordingly, I would grant leave to file for that purpose. Because the majority do not, I respectfully dissent.

TEAGUE and MILLER, JJ., join.

---

1. *Cast v. State,* 164 Tex.Cr.R. 3, 296 S.W.2d 269, 271 (Tex.Cr.App.1956).

2. See cases annotated under Article 38.14, n. 54.